### In re IRONCLAD MFG. CO.

(Circuit Court of Appeals, Second Circuit. December 9, 1912.)

Nos. 81, 91, 102.

1. BANKRUPTCY (§ 238*)—EXAMINATION OF WITNESSES—POWER OF COURT—"ORDER TO PRODUCE BOOKS."

Where, in bankruptcy proceedings against a corporation, certain creditors contend that another corporation is in fact and substance the bankrupt under a different name, the bankruptcy court has jurisdiction to order such other corporation to "produce its books" before the special master on the hearing of orders to show cause why the receivership should not be extended over the property of such company; such an order not being a determination that the books belong to the bankrupt, but being in the nature of a subpœna duces tecum and contemplating merely their delivery for examination at the hearing.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 406; Dec. Dig. § 238.*]

2. BANKRUPTCY (§ 238*)—PROCEEDINGS—CONTEMPT—EVIDENCE.

Where an order is made in bankruptcy proceedings requiring another corporation to produce its books and papers before a special master, the presumption is that the corporation is in possession and control of its own books, and, to avoid proceedings against it for contempt in failing to produce the books in obedience to the order, the corporation must clearly show that it does not have, and cannot obtain, possession of them.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 406; Dec. Dig. § 238.*]

3. BANKRUPTCY (§ 238*)—PROCEEDINGS—CONTEMPT—EVIDENCE.

In contempt proceedings against an officer of a corporation for failure to produce its books in compliance with an order of the court in bankruptcy proceedings against another corporation, evidence *held* insufficient

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

to show that she had possession of the books and insufficient to authorize her punishment for contempt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 406; Dec. Dig. § 238.*]

Petitions to Revise Orders of the District Court of the United States for the Eastern District of New York, in Bankruptcy; Julius M. Mayer, Judge.

In the matter of the bankruptcy of the Ironclad Manufacturing Company. Petitions by Elizabeth C. Seaman and the American Steel Barrel Company to revise orders of the District Court. First and second orders affirmed, and third order reversed.

See, also, 197 Fed. 280.

This cause comes here upon petitions to revise three orders of the District Court, Eastern District of New York. The first of these orders, made and entered May 14; 1912, required the Barrel Company and Mrs. Seaman as an officer thereof, and also Mrs. Seaman individually, to produce before and deliver to the special master certain books and papers. Mrs. Seaman only filed petition to review this order. The second order filed June 14, 1912, found the Barrel Company to be in contempt of court for disobeying the first order and fined it $2,500. That company and Mrs. Seaman each filed a petition to revise said order. The third order filed July 3, 1912, found Mrs. Seaman to be in contempt of court for disobedience of the first order, fined her $3,000, and committed her to the custody of the marshal for 20 days and for an additional 20 days in case of default in payment of the fine. She filed petition to revise this order.

Olcott, Gruber, Bonynge & McManus, of New York City (D. W. Kahn and Irving L. Ernst, both of New York City, of counsel), for petitioners.

E. T. Rice, of New York City, for respondent.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). Petition for involuntary bankruptcy was filed against the Ironclad Company on May 23, 1911. It has since been adjudicated a bankrupt. Receiver was appointed May 23, 1911, and was succeeded by trustee January 9, 1912. It being contended by certain of the creditors that the Steel Barrel Company was in fact and substance the Ironclad Company under another name and that all its property was the property of the Ironclad Company, orders to show cause why the receivership should not be extended over the property of the Barrel Company were made. These orders (dated June 13, and June 16, 1911) are not before us, but apparently they contained provisions enjoining these petitioners from removing or permitting to be removed or transferring or disposing of any of the books or property of the Barrel Company. Upon the hearing of these orders to show cause the District Judge expressed a doubt as to whether he had jurisdiction to decide summarily whether the claim of ownership made by the Barrel Company was bona fide or not and for that reason denied the motions. Upon his decision being brought here for review we held that the receiver and creditors were entitled to have the bankruptcy court make a preliminary investigation sum-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

marily to decide whether or not such claim of adverse ownership was merely colorable. 191 Fed. 831, 112 C. C. A. 345.

Upon the remand the District Court undertook such investigation. It was manifest that the books and records of the Barrel Company might be expected to contain important evidence bearing upon the question in controversy. Therefore after some preliminary investigation as to the whereabouts of the books, and after hearing both of these petitioners, the court made the order of May 14, 1912. It required the Barrel Company and Mrs. Seaman as an officer thereof and also Mrs. Seaman individually to "produce before and deliver to the special master on or before May 15, 1912, the ledgers, journals, cashbooks, vouchers, and passbooks of the Steel Barrel Company from the period beginning at the time of its incorporation in February, 1905, up to September 1st, 1910." Apparently the books and papers not covered by this specific designation had already been produced.

[1] The petitioners contend that the court was without jurisdiction to make such an order, apparently construing it as a determination that the books of the Barrel Company were the property of the trustee of the Ironclad. This is a misconception of the order. It did not direct that the books should be turned over to the trustee. It merely required them to be produced before and delivered to the special master, who, by designation of the District Court, was sitting as a court to take testimony upon that very issue. It was merely the equivalent of a subpœna duces tecum; the delivery to the special master contemplates merely a delivery for examination at the hearing. When books and records are produced in obedience to an ordinary subpœna duces tecum, the court may, and in a proper case sometimes does, impound them, when the ends of justice so require; but such impounding in no way affects the title. In view of the broad grant of power to make orders and issue process conferred by section 2, cl. 15, of the Bankrupt Act, and of section 21a of said act (Act July 1, 1898, c. 541, 30 Stat. 546, 552 [U. S. Comp. St. 1901, pp. 3420, 3430]), we are clearly of the opinion that the order was one which the District Court had the power to make, and in view of what the present record discloses the case was one to call for the prompt exercise of such power. Whatever suggestions might be made by the owner of the books, as to interference with the conduct of his daily business, or as to some particular entries which he might contend should not be exposed to some business rival, could be addressed to the discretion of the court after the books were produced and no doubt would receive proper consideration.

The order of May 14th, 1912, is affirmed.

[2] As to the order finding the Barrel Company in contempt for failing to produce the books and papers called for, we start with the presumption that a corporation is in the possession and control of its own books. It cannot be allowed to rebut that presumption by the mere bald statement of some officer that he does not know where they are; it must clearly show that it does not have, and cannot obtain, possession of them. Any other rule would permit corpo-

rations to ignore court orders with practical impunity. The testimony submitted by petitioner wholly fails to rebut the presumption. If it be claimed that the books have passed out of the possession of the corporation, there should be the fullest disclosure of the latest date when the books were in its possession and of the circumstances under which they were removed therefrom. If they have passed into the possession of some one who has no right to them, and presumably no one but the corporation has the right to them, there should be full disclosure as to what steps have been taken to recover possession. If some faithless officer has secreted them, the courts are open to the corporation to effect their return. If they have been destroyed and cannot, therefore, be produced, time, place, and circumstances of such destruction should be shown as fully as possible, so that the court may be able to determine whether the corporation was itself innocent, or whether such destruction was an operation in which officers, directors, and stockholders all took part or to which they assented.

The order of June 14, 1912, is therefore affirmed. Such affirmance, however, would operate as res adjudicata touching only the order already disobeyed. If the District Court, in a further effort to obtain necessary evidence, should again order the corporation to produce these books, it would be free to show if it could, any facts which would excuse it from such production. Possibly, if all concerned, officers, directors, and stockholders, realized that, unless they could rebut the presumption of possession by very clear proof, a fine very much heavier than the one imposed for the first offense would presumably be imposed, there might be a much fuller and franker statement of facts than there has yet been made.

[3] As to the order finding Mrs. Seaman individually in contempt for not producing books which do not belong to her, we have no presumption of possession. Possession must be shown by proof, and it seems to us that the proof to be found in this record does not satisfactorily establish the proposition that at the time the order to produce was served upon her the books were in her custody and control. Her own evidence is very unsatisfactory and seems to indicate that no reliance can be placed on any statement she may make; but, if her testimony be struck out as untrustworthy, there is no other evidence sufficiently convincing to warrant her imprisonment for contempt. In her own testimony we do not find any statement which can be taken as an admission that the books were in her personal possession. The District Judge relied principally upon a joint answer of the Barrel Company and of Mrs. Seaman to the orders to show cause of June, 1911, in which answer there is an averment that the Barrel Company was in possession, enjoyment, and control of certain real estate, buildings, machinery, tools, and assets of every description, including "books of account, records, and documents." This averment is apparently directed to an issue of ownership, and moreover it admits only possession by the Barrel Company, not by Mrs. Seaman individually. It also includes all books and documents, old and new, and might have been made in just such phraseology if these particular books and records, now sought for, had already been destroyed. To

warrant imprisonment for failure to obey the order of May 14, 1912, a clear case of disobedience of that particular order must be made out, and we do not think the proof is sufficient. It is quite apparent from this record that throughout this bankruptcy proceeding Mrs. Seaman has been repeatedly contumacious; when under examination flippant, defiant, impertinent, evasive, and self-contradictory. It may be that on some occasions her conduct has been such as to call for punishment as well as admonition; but it is not for these things that the order of July 3d found her in contempt.

We are not convinced that sufficient has been shown to warrant the finding of this last-named order, and, for that reason, reverse it.