**In re GORDON & GELBERG.**

**Appeal of GORDON et al.**

**No. 205.**

Circuit Court of Appeals, Second Circuit.

Feb. 13, 1934.

David Haar, of New York City, for appellants.

Burnstine & Geist, of New York City (George E. Netter and George G. Charney, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUS-TUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The order appealed from directs the appellants, who were officers of the corporation, to turn over books of account belonging to the bankrupt.

The petition filed in the proceeding, which resulted in the order, alleges that the corporation was organized and doing business for about five years, manufacturing fur garments. Each of the appellants owned one-half of its capital stock. Books of account were kept by the bankrupt which employed a competent bookkeeper who made entries of the corporation's business. In addition, the bankrupt employed a certified public accountant, who audited the books monthly, prepared trial balances, and made out income tax returns. It alleges that it was the custom on the 1st of February of each year to transfer to a new set of books of account the balances as shown on the preceding year's books, and this practice prevailed and was followed on the 1st of February, 1930, the fiscal year of the bankrupt corporation ending on January 31 of each year. It alleges that prior to bankruptcy the bankrupt submitted its financial affairs to the American Fur Merchants' Association and executed a deed of trust of all its property and surrendered its books and records for the association's accountants to prepare a balance sheet showing the status of the bankrupt corporation at that time. It alleges that in turning over its books to the accountant, it did not produce the books and records for the year prior to February 1, 1930, but current books were turned over in which appeared the balances from the preceding year, and these balances in no way indicated the details of the transactions resulting in the balances. It alleges that no record whatever of the transactions prior to February 1, 1930, were available to the trustee. The bankrupt issued a financial statement subsequent to February 1, 1930, a copy of which was annexed to the petition. The petition further states that the appellants, in their testimony, claimed that the books of account of records for 1929 were not in their personal custody, that they had a bookkeeper who had charge of the books of account, and that neither of the appellants ever had occasion to examine the books of account, and that, if they required information, they obtained it by inquiry from the bookkeeper or from the accountant whom they employed. It alleges that the custom of the firm was to place the books of account that were not used in packing boxes, and a number of these cases had accumulated containing the books of account in question. These were moved in July, 1930, to an additional loft on Seventh avenue, New York City, which had been leased under a lease expiring December 1, 1930. The bankrupt moved considerable other property to this loft in order to make room for carrying on its business in the place it occupied. It alleges that the foreman who had charge of these boxes, with other employees, transferred them; that after the transfer the foreman was instructed to throw out the cases of books, and he did so by paying a dirtman who carried away other junk with them. The petition alleges in conclusion: "It is manifest from a mere recital of the facts that no definite explanation has been made yet of the disappearance of these permanent records which are so vital and necessary in the investigation of the affairs of this bankrupt concern."

An answer was filed denying that the appellants had in their possession or control the books, records, or other documents referred to in the petition.

To substantiate this petition, the receiver called both appellants, the bookkeeper, the foreman, and other employees who had to do with the removal of the books.

The testimony of appellant Gordon established the routine method employed by the bankrupt in its business with respect to the keeping of records. He testified it was the practice to open a new set of books every year and make the transfer of the balance from the old to the new books. He testified to the lease of the Seventh avenue loft in July, 1930, and the transfer of the books in question together with other books, patterns, and old merchandise to the new place in that month. While appellant Gelberg could neither read nor write English, he had charge of the factory. He testified to the custom of placing the old books in boxes and storing them in a shipping room; also moving the boxes to the Seventh avenue building with other unused books, patterns, and merchandise.

The foreman testified to the removal of the books, and stated that he was instructed to throw out some of the unused and unwanted boxes which included the books in question and that they were disposed of as junk the end of July or early in August, 1930. Two employees testified to moving the books in question to the new loft building, as did the bookkeeper. The bookkeeper gave testimony of keeping the books in the regular course of business and of supervision by the certified

public accountant, who gave monthly reports as to the condition of the firm's business. It is quite clear from the testimony of the foreman that the books directed to be turned over by the order below were in fact given to a dirtman who was paid for taking the "stuff" away. The foreman testified that after giving directions to take away the undesired "junk" he went out, and when he returned his instructions had been carried out.

An accountant, called by the receiver, testified that he made periodical audits of the bankrupt's books, that his work sheets had been turned over to the receiver and that he had turned over all his papers containing copies of these books, including copies of income tax reports for 1929. The last he saw of the books was in February when he closed them. He knew of the practice of the firm of opening a new set of books every year and carrying the balances. There was no contradiction of this testimony.

■ The referee in bankruptcy, after hearing the witnesses, found that the appellants' explanation of the loss of the books was supported by credible evidence. The District Judge on review stated his disbelief in the explanation of the disappearance of the books, and said: "The tale contained in the testimony here and which is designed to avoid a turn-over order, is of the cock and bull variety." This conclusion is based merely upon a willingness to disbelieve testimony offered by the receiver and which stands uncontradicted. This we think is unwarranted. The referee's findings were based on the testimony of witnesses whom he saw and heard. The court's result was reached merely upon an unjustified unwillingness to believe uncontradicted testimony. In Re Slocum (C. C. A. 2) 22 F.(2d) 282, 284, this court held that where the question was "whether the bankrupt intentionally testified falsely regarding the matters in dispute turns entirely upon the credibility of the witnesses. The special master, who heard them and saw them, is better qualified to determine this issue than is the District Judge, or this court from the printed record," and that "hence the rule has become established that, when the action of the special master or referee is based upon conflicting testimony which involves the credibility of witnesses, his findings ought to be accepted,

unless it appears that he has made a plain mistake; and particularly is this true where the motive and intent of the bankrupt becomes material." Here there was no motive to indicate concealment or deceit by the appellants.

■ The burden rested upon the appellee to show knowledge of the existence, control, or custody of the books. In Oriel v. Russell, 278 U. S. 358, 49 S. Ct. 173, 174, 73 L. Ed. 419, the Supreme Court stated that, where the charge upon which the turnover order in bankruptcy rests upon having possession of property which he knew should have been delivered to the trustees, and where there is an alleged refusal to comply with the application, it is a charge equivalent to one of fraud and must be established by the same kind of evidence required in a case of fraud in a court of equity. "A mere preponderance of evidence in such a case is not enough. The proceeding is one in which coercive methods by imprisonment are probable and are foreshadowed. The referee and the court in passing on the issue under such a turnover motion should therefore require clear evidence of the justice of such an order before it is made."

■ The appellee had the burden of establishing by clear proof (a) title to the property in the trustee as part of the bankrupt estate and (b) that the appellants at the date of the bankruptcy and when the order was made were in possession and control of the books which had been kept and concealed from the trustee. To be sure there is a presumption that, having had possession, they have continued in such possession until a credible explanation has been made of what became of the property. In re H. Magen Co., Inc. (C. C. A.) 10 F.(2d) 91. This burden of explanation has been sufficiently established by uncontradicted testimony. It should always appear when a turnover order has been made that a respondent has the power to comply with the order because the property was in his possession. Oriel v. Russell, 278 U. S. 358, 49 S. Ct. 173, 73 L. Ed. 419; In re Goldman, 62 F.(2d) 421 (C. C. A. 1).

The findings of the referee are based upon convincing evidence, and the court improvidently reversed his ruling.

Order reversed.