## In re CITY PLUMBING SUPPLY CO., Inc.
### No. 31139.

District Court, E. D. New York.
March 6, 1939.

Herman G. Robbins, of Brooklyn, N. Y., for petitioner.

Louis I. Rothenberg, of Brooklyn, N. Y., for respondent Irving Moritt.

Benjamin Gassman, of New York City, for respondent Simon Glaser.

Julius J. Abeson, of New York City, for trustee.

GALSTON, District Judge.

This matter comes before the court on a motion to review the order of the referee directing the respondents, Irving Moritt and Simon Glaser, to turn over plumbing supplies valued at $12,067.39; the books and records of the Irving Plumbing Supply Co., Inc.; cancelled checks and stubs; bank statements for December 1935, and from January through July of 1936; check book of Corn Exchange Bank and Trust Company; bankrupt's books, records and cancelled checks; paid cash vouchers; assignments of accounts receivable transferred to the Royal Industrial Bank, and a cash register.

The bankrupt corporation was organized on or about January 1, 1936 and its president is the respondent, Irving Moritt. Prior to the organization of the present corporation he had conducted the same kind of business, the selling of plumbing and heating supplies, while acting as the sole stockholder of the Irving Plumbing Supply Company. That corporation was in business for approximately two years. Prior to that Moritt had organized the Pulaski Plumbing Supply Company in the same line of business and was its sole stockholder. That company had been in business for ten years. The Pulaski company met with reverses in 1930 or 1931 and settled with its creditors. The Irving Plumbing Supply Company found itself in

difficulties because of lack of capital, and Moritt said he looked around for a partner and formed a partnership with Simon Glaser, the other respondent. The new corporation, the bankrupt herein, took over all the assets and assumed the debts and liabilities of the Irving Company. Creditors of the Irving had been pressing for payment.

Moritt had known Glaser for four or five years and the Irving Plumbing Supply Company had had dealings with him as had the Pulaski Company, in buying and selling merchandise from and to Glaser. Glaser is connected with the Glaser Lead Company. He said Glaser knew the condition of his business and asked him to join forces with him. Glaser's attorney formed the bankrupt corporation. The accountant for the Irving was one Heilwell and when the City Plumbing Supply Company was organized a different accountant was engaged by Glaser, one Edwin Fluss, and a set of books was opened for the City Company. At that time all of the books of the Irving Plumbing Supply Company were on the premises at 967–969 Myrtle Avenue, Brooklyn. The City Company continued the business of the Irving Company at the same address.

The City Company lost money apparently from the beginning. At any rate it could not meet its current obligations promptly and creditors were pressing for payment. A number of accounts receivable, which the Irving had assigned, were not collectible. Glaser was frequently at the office. Though he was primarily the financial man, said Moritt, he did some selling of merchandise, but both the signatures of himself and Glaser were required on the company's checks. The latter did the buying as well as the larger part of the selling. Some accounts had been assigned as early as May in 1936, and an assignment for the benefit of creditors followed on August 3, 1936. During this period it appears too that some merchandise was returned to creditors and to Irving Pemstein, an employee in the store to whom money was owed and who took merchandise in payment.

Abramowitz, an accountant for the assignees for the benefit of creditors, testified that he had a talk with the attorney for the bankrupt who had possession of the books. From the attorney he obtained some books of account which included the accounts receivable ledger and some other records. At the office of the bankrupt he looked around for other records and found some cancelled checks, cash slips, charge sales slips and some bank statements. The accountant did not find the books and records of the Irving Plumbing Supply Company nor the check book of the Corn Exchange Bank & Trust Company with check stubs 200 to 235 inclusive, nor the bankrupt's corporate books, consisting of minute book, stock book and stock transfer book, nor the bank statements of the Corn Exchange Bank & Trust Company for the months of December, 1938, January, February, April, May, June and July of 1936, nor were any cancelled checks for the months of June and July, 1936, found, nor any of the cancelled checks of the vouchers listed in Schedule B annexed to the trustee's petition. Abramowitz made an audit of the bankrupt's books and records covering the period from January 1, 1936 to August 4, 1936. The inventory as shown by the books as of December 31, 1935, showed $16,526.55. The net purchases during the period amounted to $27,975.41, making a total of $44,501.96. He deducted the net sales at cost for the same period in the sum of $28,434.57. This left a net total of $16,067.39. From this total he deducted the estimated amount of merchandise found on the premises on August 4th of $4,000, which left a net shortage of $12,067.39. In making this computation the accountant assumed that all the sales during the period had been made at cost.

In his search for records he did not go to the cellar of the premises.

The sales price of the merchandise at auction by the assignee for the benefit of creditors was approximately $2,100 gross. The estimate of the value of the merchandise found on the premises of $4,000 was that of the auctioneer. Abramowitz testified that entries in the journal ledger purported to come from a petty cash book, but there was no such book available.

Abramowitz, recalled, said that he had included in the total sales of $28,434.57, items of the North Side Plumbing Supply Co., $838.80; Bushwick Cornice Works, $892.95; Riverside Supply Company, $1,276.00; Columbia Cement Company $500; and Sackler Brothers, $991.54.

He did not deduct from the inventory figures any returns made by the bankrupt to the Laclede Pipe Company, nor any returns to the Cowan Sales Company of

$51.86, nor the returns to Coyne & Delaney, nor the merchandise taken or returned to Pemstein, nor to the National Foundry account. He said there were no returns according to the records of merchandise to Cowan Sales Company, Coyne & Delaney, National Foundry or Jefferson Tank & Seat Company.

The old records of the Irving Plumbing Supply Company, not actively used in the business of the City Plumbing Supply Company, were kept in the cellar of the premises at 967–969 Myrtle Avenue. The old invoices and receipts for merchandise were in a bag, likewise placed in the cellar. The only books used actively in the conduct of the business of the bankrupt during the last six months of its activities were its own books and were kept in the safe. Those books prior to the bankruptcy were taken over to the attorney's office.

Helen Schwartz, the bookkeeper of the bankrupt, said that the inventory figure of $16,526.55, on the books of the City Plumbing Supply Company as of December 31, 1935, was a transfer of an inventory figure from the books of the Irving to which had been added 25% because of a market rise.

It is contended by the respondents that they should not be charged with having had the possession or control of merchandise in the amount of that book inventory. Moritt indeed goes so far as to state that the predecessor companies had never taken a physical inventory. Such testimony seems hardly credible but even to accept it does not help the respondents to any appreciable degree for at or about the time the City Plumbing Company was incorporated two employees, Pemstein and Morganey, took an inventory. Moritt testified that he saw the inventory: "After they finished with it I believe they handed it to me or put it on my desk."

The absence of these inventory sheets is most significant. Also it is hardly to be believed that two men would form a business enterprise without checking as to the assets.

■ However, to be perhaps more than fair to them, they should in this proceeding not be charged with the twenty-five per cent addition which Moritt ordered to be entered in the books to meet an alleged increase in market prices.

On such re-adjusted figures they must be charged in the circumstances of the case with merchandise of the fair value of at least $13,221.24. The order of the referee will accordingly be modified by reducing the amount of merchandise to be turned over to the trustee by the sum of $3,305.81, which is the sum representing the twenty-five per cent padded figure.

In respect to vouchers, Miss Schwartz, the bookkeeper, said that when she left the employ of the bankrupt in July 1936, cancelled vouchers were left in the files.

As to missing records of assigned accounts, Daub, an accountant for the Royal Industrial Bank, testified that he had examined the books and records of the bankrupt; that when he looked over the accounts receivable ledger he stamped the pages of the accounts receivable ledger, showing any of the accounts which had been assigned to the Royal Industrial Bank. Trustee's Exhibit 2 of June 16, 1937 showed the accounts of the River Stove Supply Company. It does not bear the stamp of the Royal Industrial Bank nor does that of the Columbia Cement account, nor of the North Side Plumbing, nor of the Bushwick Cornice Works, nor of Sackler Bros. The witness could not find a single one of the stamped assigned accounts.

■ The books and records of the Irving Plumbing and Supply Co., Inc., were in the control of Moritt. It does not appear that Glaser had possession or control of them. He should therefore not be obligated to produce them. The provision of the referee's order relating thereto should be modified accordingly. Both Moritt and Glaser should be relieved of the burden of turning over the cash register. The proof is that Moritt sold the register and accounted for the proceeds thereof.

■ I agree with the referee that the proof submitted by the trustee is of that character required by the authorities. It is sufficiently clear and convincing to justify his finding that the respondents had possession and control of the merchandise and records sought. Matter of Gordon & Gelberg, 2 Cir., 69 F.2d 81; Matter of M. & M. Mfg. Co., Inc., 2 Cir., 71 F.2d 140.

The referee's order, modified as indicated, will be affirmed. Settle order.