### In re HARRIS.

District Court, S. D. New York.

Jan. 19, 1939.

Weisman, Celler, Quinn, Allen & Spett, of New York City (Murray C. Spett, Arthur Sheinberg, and Edmund P. Silver, all of New York City, of counsel), for trustee.

Mudge, Stern, Williams & Tucker, of New York City (George L. Trumbull and Randolph H. Guthrie, both of New York City, of counsel), for Chase Nat. Bank.

PATTERSON, District Judge.

In examination of the bankrupt under section 21a of the Bankruptcy Act, 11 U.S. C.A. § 44(a), it developed that not long before bankruptcy he had transferred large sums of money abroad, apparently to a person who maintained a bank account with a London office of Chase National Bank. The trustee in bankruptcy served a subpoena duces tecum on the Chase National Bank, requiring it to produce a

transcript of the account of the person with the London office of that bank. In response to the subpoena an officer of the bank appeared and stated to the referee that the main office here had no copies of accounts between the London branch and its depositors. The referee directed the officer to procure a transcript of the account from the London branch and produce it at an adjourned date. At the adjourned date counsel for the bank informed the referee that the bank had received a transcript of the account from its London office, but asked him to reconsider his order for production of the transcript. It was claimed that the bank was not subject to compulsory production of a transcript of an account between its London branch and a depositor. The referee on reconsideration ruled that the bank was not obliged to produce it, and certified to this court the question whether his ruling was correct. The relevancy of the document to a judicial inquiry into the acts, conduct or property of the bankrupt is not challenged.

There was testimony before the referee that the London branch conducts business under regulations laid down by the British banking authorities; that the branch is in charge of a vice-president appointed by the board of directors here; that it keeps a checking account with the main office here, keeps its own reserves and makes its own investments; that it does not ordinarily report to the main office on details of operations; that the only information concerning its accounts with depositors which is on hand at the main office is a list of the names of depositors.

■ The force of a subpœna for production of documentary evidence generally reaches all documents under the control of the person or corporation ordered to produce, saving questions of privilege and unreasonableness, and it makes no difference that a particular document is kept at a place beyond the territorial jurisdiction of the court that issues the subpœna. The test is one of control, not of location. In re National Public Utility Investing Corporation, 2 Cir., 79 F.2d 302, 303; In re Consolidated Rendering Co., 80 Vt. 55, 79, 66 A. 790, 11 Ann.Cas. 1069. See also Rule 34, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The question then is whether a bank with its main office here may fairly be said to have control of papers kept at a foreign branch concerning a customer's account with the branch.

■ The authority for maintenance of foreign branches by national banks comes from the National Banking Act. 12 U.S.C.A. §§ 601–604. The Act provides in section 604 that a bank with foreign branches "shall conduct the accounts of each foreign branch independently of the accounts * * * of its home office". This enactment recognized and reinforced what had already been the rule by business practice and commercial necessity. In many respects a foreign branch, while in last analysis an agency of the bank is treated, in the words of Judge Hough, as "a separate business entity". Pan American Bank & Trust Co. v. National City Bank, 2 Cir., 6 F.2d 762, 767. See also Chrzanowska v. Corn Exchange Bank, 173 App.Div. 285, 291, 159 N.Y.S. 385; Rex v. Lovitt, [1912] A.C. 212, 219. The account of a customer of a foreign branch has been held, properly it would seem, not subject to attachment or garnishment by process served on the bank at the home office. Bluebird Undergarment Corporation v. Gomez, 139 Misc. 742, 249 N.Y.S. 319; Richardson v. Richardson, [1927] P. 228. Under the Uniform Bank Collection Code, enacted by many states including New York, a branch is deemed an independent bank for collection purposes. Marlboro Trust Co. v. Elliott, 4 Cir., 86 F.2d 315. While of course the ultimate power as well as responsibility in respect to operations of the branch must rest with the bank itself, the fact that by section 604 the accounts of a foreign branch are to be conducted "independently" of the home office leads to the conclusion that the records of a depositor's account with a foreign branch, not kept here, are not so within the control of the main office here as to be subject to production by subpœna duces tecum served here.

The bank makes the further proposition that production of the document in court would involve its London branch in violation of English law. The statute cited, the Bankers' Books Evidence Act, when read in its entirety, does not seem to support the proposition. But since the transcript of the account need not be produced on other grounds, the merits of this point may be passed.

■ The fact that the paper demanded was physically within the control of the

bank in this district when the referee made his final ruling does not affect the case. It had been brought here not voluntarily but under compulsion of a ruling which the referee later retracted. The referee did not err in considering the matter anew and treating the case as if the paper were still in London.

The referee's ruling was right and the question certified will be answered accordingly.