In the Matter of the Application of Donald
DANIELS to vacate a certain summons,
to appear, to testify and to produce
books, etc.

United States District Court
S. D. New York.
April 10, 1956.

Corcoran, Kostelanetz & Gladstone, New York City, Boris Kostelanetz, Jules Ritholz, New York City, of counsel, for petitioner.

Paul W. Williams, U. S. Atty., for the Southern District of New York, New York City, Clement J. Hallinan, Jr., Asst. U. S. Atty., New York City, of counsel, for United States.

IRVING R. KAUFMAN, District Judge.

On December 24, 1954, pursuant to Section 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602, a Commissioner's summons was served upon petitioner ordering him to appear before a Special Agent of the Internal Revenue Service to give testimony in the matter of his personal tax liability for the years 1948 and 1949, and requiring him to bring to that hearing certain books and records of the International Commodities Corporation (hereinafter the Corporation), a nonresident Panamanian corporation of which petitioner is president and sole stockholder. This proceeding marks the second attempt to procure an order vacating that summons, the first motion having been brought by the Corporation as petitioner in its own behalf. In the present motion, the individual petitioner urges that compelling him to produce the books of this foreign corporation will violate his rights under the Fourth and Fifth Amendments to the constitution since he is holding these books in a purely personal capacity and not as corporate custodian. He further contends that enforcing this summons will do violence to principles of international law and comity. The Fifth Amendment question presented by petitioner appears to be novel; hence I believe it useful to the consideration of the problem presented to set forth the prior history of these proceedings in detail.

The summons is directed to "Donald Daniels, Pres. International Commodities Corporation residing at c/o Donald Daniels, 860–5th Ave., New York, N. Y." On January 6, 1955, the Corporation moved to vacate the summons contending that the above-quoted language clearly showed that the summons was directed to Donald Daniels in his corporate capacity, and that the summons was, therefore, an invalid attempt to assert jurisdiction over a nonresident alien corporation which had never done business in the United States and was not amenable to process here. The government urged in reply to that motion that the summons was not directed to the Corporation, but was directed to Donald Daniels as an individual. In support of its contentions, the government pointed out that the summons was not in the corporate form used by the Treasury Department, and it urged that the words "Pres. International Commodities Corp." appearing after Daniels' name were merely *descriptio personae*. The District Court sustained the government's position and denied the Corporation's motion to vacate in a Memorandum dated March 8, 1955. This holding was affirmed by the Court of Appeals in International Commodities Corp. v. Internal Revenue Service, 2 Cir., 1955, 224 F.2d 882.

The petitioner thereupon brought the present motion in his own behalf. In the affidavit accompanying his moving papers, he avers that the Special Agent before whom he was ordered to appear is in the process of preparing a criminal case against him,[1] that criminal charges have been alleged against him by the Internal Revenue Service, and that his relations with the Corporation form part of those criminal allegations. He asserts that in these circumstances, the enforcement of this summons which requires him to produce the Corporation's

---

1. See letter to Donald Daniels dated June 20, 1955 from Alfred E. Walters, Jr., Group Supervisor, Intelligence Unit, U. S. Treasury Department.

records would violate his constitutional rights under the Fourth and Fifth Amendments since these records might tend to incriminate him. He contends that although the records are corporate, they are being held by him in his personal capacity and they are therefore within the scope of the constitutional protection.

In its reply, the government does not deny that there is this strong likelihood of criminal prosecution, nor does it deny that the privilege against self-incrimination might properly be invoked to protect petitioner's personal papers. However, it contends that, by their nature, corporate books can never be held in a personal capacity, and since the privilege against self-incrimination applies only to the personal papers of the petitioner or those in his possession in a purely personal capacity, the Fifth Amendment cannot shield the petitioner.

Thus, in essence, the government's position is that there is no problem of jurisdiction over the Corporation here as the summons is directed to petitioner in his individual not his corporate capacity; nevertheless, it asserts, petitioner cannot claim the protection of the Fifth Amendment here as the records sought are being held by him as corporate custodian. The petitioner urges, therefore, that the government is attempting to gain by indirection that which it is barred from obtaining by direct action. I concur in that contention.

█ Barring questions of privilege and unreasonableness, a subpoena or order for the production of documentary evidence generally reaches all documents under the control of the person required to produce, and this rule applies even where the documents sought are physically beyond the jurisdiction of the ordering court. Securities and Exchange Commission v. Minas De Artemisa, S. A., 9 Cir., 1945, 150 F.2d 215; Hopson v. United States, 2 Cir., 1935, 79 F.2d 302; In re Rivera, D.C.S.D.N.Y.1948, 79 F. Supp. 510; In re Harris, D.C.S.D.N.Y. 1939, 27 F.Supp. 480. In the De Artemisa case, the court pointed out that

even the documents of a foreign corporation are thus available for inspection, or, if the foreign law forbids the removal of the corporate records from the chartering country, then copies of such documents can be ordered produced. Thus clearly there is no problem of international law in this case as petitioner has the books in his control in this country. Furthermore, he has not made any showing of contrary foreign law as was the case in De Artemisa. These cases, however, and the rule for which they stand do not resolve the problem of the applicability of the Fifth Amendment privilege.

The government contends that the constitutional question raised by petitioner here was decided adversely in United States v. White, 1944, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542; Wilson v. United States, 1911, 221 U.S. 361, 31 S. Ct. 538, 55 L.Ed. 771; and Hale v. Henkel, 1906, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652. These three cases provide the basis for all later decisions upholding the right of the government to compel the production of corporate and organizational documents as against an official custodian who claims the privilege of self-incrimination.

Their underlying rationale was first spelled out in Hale v. Henkel where the Supreme Court set forth the principle that the state creating the corporate entity reserves a visitorial power over it which is not qualified by any right on the part of the corporation to plead the privilege against self-incrimination. The Court said:

"The individual * * * is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the state or to his neighbors to divulge his business, or to open his doors to an investigation, so far as it may tend to criminate him. He owes no such duty to the state, since he receives nothing therefrom, beyond the protection of his life and property. His rights are such as existed by the law of the land long

antecedent to the organization of the state * * *.

"Upon the other hand, the corporation is a creature of the state. It is presumed to be incorporated for the benefit of the public. * * * Its rights to act as a corporation are only preserved to it so long as it obeys the laws of its creation. There is a reserved right in the legislature to investigate its contracts and find out whether it has exceeded its powers." Id., 201 U.S. at pages 74–75, 26 S.Ct. at page 379.

Moreover, the Court pointed out that although the corporation ordinarily receives its franchise from a specific state, it is subject to a dual sovereignty by virtue of our federal system, and, therefore, the corporation is subject to a visitorial and regulatory power on the part of the federal government when it transacts business within that government's sphere of control.

In United States v. White, supra, the Court extended this rule to unincorporated associations. It said that although the idea of a reserved power in the charter-granting sovereign was a convenient justification for permitting the inspection of records, absence of a state charter "as to a particular type of organization does not lessen the public necessity for making reasonable regulations of its activities effective." Id., 322 U.S. at page 700, 64 S.Ct. at page 1252. The Court asserted that the basic reason for this power of the government to compel the production of organizational records was the inherent and necessary power of federal and state governments to enforce their laws. The Court held that the privilege against self-incrimination was to be limited to its historic function of protecting only natural persons from compulsory incrimination through their own testimony or personal records. It could not protect an organization.

██ Since the books of a domestic corporation or one doing business here are thus always subject to inspection by the state, the logical extension of this rule, first applied in the Wilson case, was that the corporate custodian of these records cannot plead the privilege even if the documents tend to incriminate him personally. The Court stressed the fact that the official custodian held these books in an impersonal, representative capacity and said that when a corporate officer assumes official custody of its books, he accepts the incident obligation of permitting inspection. A contrary rule would clearly deprive the state of its visitorial power since a corporation must, by its nature, act through its officers, and the power of a court to compel the production of corporate records cannot be made to depend upon which particular officer has them in custody.

Although courts have since spoken in broad language of the "general rule" that corporate documents are not protected by the privilege, an extensive search of such decisions has failed to reveal a single case which did not cite one of the three above-mentioned decisions as authority for this proposition and then apply it to corporations or other organizations transacting business within the jurisdiction. Thus it seems that this rule has been applied exclusively in situations where the corporation is subject to the visitorial or regulatory power of the demanding sovereign. Clearly, this rationale cannot support the government's demand in the instant case, as the International Commodities Corporation has never been subject to the jurisdiction of the federal government; indeed, the government has specifically denied that it seeks to obtain jurisdiction over the Corporation.[2]

2. It should be noted that the one other rationale which has been used to except certain documents from the privilege against self-incrimination is also inapplicable here. This is the doctrine that the privilege may not be pleaded as to public official records or records required by law to be kept. The latter category has normally been held to include documents invested with a public interest such as records of liquor sales, harmful drug sales and the like, and it has

Thus the government seems to be contending here that this basic rationale of regulatory control over organizations within the government's jurisdiction is unnecessary to sustain an order compelling the production of corporate books over the claim of constitutional privilege. Rather, it urges that sole consideration is to be given to the stress these three leading decisions placed upon the impersonal, representative capacity in which corporate records are held. Its position is that corporate books, *by their nature,* cannot be held in a purely personal capacity. It argues, therefore, that even though petitioner is concededly in this country solely on personal business and has shed his corporate personality at the border so far as jurisdictional questions are concerned, nevertheless, his possession of these books is official and impersonal within the meaning of the Fifth Amendment. To accept this contention, I believe, would be both illogical and unconstitutional.

In United States v. White, supra, 322 U.S. at page 699, 64 S.Ct. at page 1251, the Supreme Court held that "the papers and effects which the privilege protects must be the private property of the person claiming the privilege, *or at least in his possession in a purely personal capacity.*" (Italics supplied.) Time after time in establishing the limits of this great constitutional protection, the courts have repeated that basic phrase

making it patently clear that the capacity in which the desired documents are held is as vital to a decision as is the question of their nature. E. g. Rogers v. United States, 1951, 340 U.S. 367, 372, 71 S.Ct. 438, 95 L.Ed. 344; Communist Party of the United States v. Subversive Activities Control Board, 1954, 96 U.S. App.D.C. 66, 223 F.2d 531, 547; Field v. United States, 2 Cir., 193 F.2d 86, 91, and United States v. Field, 2 Cir., 193 F.2d 92, 97, certiorari denied 1951, 342 U.S. 894, 72 S.Ct. 202, 96 L.Ed. 670; United States v. Wernes, 7 Cir., 1946, 157 F.2d 797, 800. Acceptance of the government's contentions here would mean the exclusion of this separate and distinct test of capacity in which the records sought are held. The government seeks to create an irrebuttable presumption that once it appears that the records sought are corporate, it follows *ipso facto* that such records are held in official custody.

The process of whittling away the Fifth Amendment's broad protection by judicial construction was recently criticized by the Supreme Court in Ullman v. United States, 76 S.Ct. 497, 500. In that opinion, the Court described the privilege against self-incrimination as " 'one of the great landmarks in man's struggle to make himself civilized.' * * * This constitutional protection", it said, "must not be interpreted in a hostile or niggard-

---

been sanctioned on the ground that it requires only those documents to be made public which record activities that the government could forbid. Another supporting rationale for applying this rule of compulsory disclosure to such records is set forth in VIII Wigmore on Evidence, § 2259(c) (3rd Ed. 1940): "[T]here is no compulsory self-incrimination in a rule of law which merely requires beforehand a future report on a class of future acts among which a particular one may or may not in future be criminal at the choice of the party reporting." In Shapiro v. United States, 1948, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787, in a 5-4 decision, this required records doctrine was applied to compel disclosure of personal business records

required to be kept under the emergency price control laws. Some fear has been expressed that as a result of this decision, the required records doctrine might be extended to the field of personal business records required to be kept by virtue of the income tax laws; however, the courts thus far have refused to thus extend the doctrine, see Redlich, Searches, Seizures and Self-Incrimination in Tax Cases, 10 Tax Law Rev. 191 (1954–1955), and in light of its limited rationale, it is doubtful if they will do so. Indeed, in the instant case, the government does not contest petitioner's allegations that he could plead the Fifth Amendment if the documents sought were his own personal business records.

ly spirit." [3] Application of that liberal rule of construction militates in favor of petitioner's contentions in the instant case.

Moreover, I find it far more logical to give credence to petitioner's claim of personal custody here than to accept the government's argument that although the Corporation has concededly never entered this jurisdiction or taken any action here, nonetheless, petitioner is acting as official, corporate custodian of the records sought. The rule is clear that corporate books can be held by a person in some other capacity than that of corporate custodian, see e. g. Hopson v. United States, 2 Cir., 1935, 79 F.2d 302 (books held by the attorney of the independent liquidators of a corporation); Continental Insurance Co. v. Equitable Trust Co., 1930, 137 Misc. 28, 244 N.Y.S. 377, 383, affirmed 1st Dept.1930, 229 App.Div. 657, 243 N.Y.S. 200 (books held by receiver of corporation), and I can find no authority which would lead me to the conclusion that books of a foreign corporation not doing business here may not under any conditions be held in a purely personal capacity.

By my decision here, it should be clear that I do not hold that the claim of personal custodianship is open to the custodian of the records of domestic corporations or corporations doing business within the jurisdiction; the assertions of governmental regulatory power set forth in Hale, Wilson and White would set up an insurmountable barrier to such an argument.[4] But I do not face that problem here. These decisions make it clear that the privilege of the Fifth Amendment does not rest upon an individual's absolute title to the documents in question; rather it rests upon his legitimate and personal possession.[5] We have here a unique corporate situation to which my decision is limited. We are dealing exclusively with a corporation which concededly is resident in a foreign state and concededly has never done business in this country, while petitioner, its president and sole stockholder, is a Unit-

3. The importance of the Fifth Amendment privilege was again reaffirmed by the Supreme Court in Slochower v. The Board of Higher Education of The City of New York, 76 S.Ct. 637. The Court stated: "The right of an accused person to refuse to testify * * * was so important to our forefathers that they raised it to the dignity of a constitutional enactment, and it has been recognized as 'one of the most valuable prerogatives of the citizen.'"

4. See Grant v. United States, 1913, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423; Wheeler v. United States, 1913, 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309.

5. In the landmark case of Boyd v. United States, 1886, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, the Court pointed out the close affinity between the search and seizure provisions of the Fourth Amendment and the self-incrimination provisions of the Fifth. The Court traced the history of these two safeguards and showed that the unreasonable searches condemned in the Fourth Amendment were almost always made for the purpose of procuring incriminating evidence and thus, in a sense, compelling a man to give evidence against himself. It held, therefore, that ordering an individual to produce personal papers of an incriminating nature would be tantamount to an illegal search and seizure and thus violative of both the Fourth and Fifth Amendments. The reasoning in Boyd has been constantly reaffirmed by the Court, e. g. Oklahoma Press Publishing Co. v. Walling, 1946, 327 U.S. 186, 205, 66 S.Ct. 494, 90 L.Ed. 614; Gouled v. United States, 1921, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Weeks v. United States, 1941, 232 U.S. 383, 397, 34 S.Ct. 341, 58 L.Ed. 652; and it was most recently reaffirmed in Ullman v. United States, supra, where the Court said specifically that it left the decision in the Boyd case unqualified. See also United States v. Lerner, D.C.N.D.Cal.1951, 100 F.Supp. 765. In these seizure cases, it is clear that the test is not ownership of the documents taken but invasion of petitioner's privacy and right to personal possession. Of course, this rule does not apply where the articles seized are stolen, contraband or forfeited property or themselves constituted the means of committing the crime. See Corwin, The Supreme Court's Construction of the Self-Incrimination Clause, 29 Mich.L.Rev. 1, 17–20 (1930–31); Rottschaefer, Constitutional Law 742–49 (1939).

ed States citizen. In these circumstances, it is not inconceivable that petitioner has custody of the books for his own personal purposes, and the facts in this case, coupled with the government's admission that the summons is addressed to petitioner not as a representative of the Corporation but in his individual capacity, lend weight to petitioner's claim of personal capacity and give it credence.

 Since petitioner is holding these books in his personal capacity, he is entitled to resist their production on the grounds of possible self-incrimination to the same extent that he could resist the production of his purely private papers. Petitioner has asserted in his affidavit that he is a potential criminal defendant who could not be compelled to produce his private papers, and since the government has not attempted to refute those averments, I must take them to be true.

One final problem must be considered. The summons seeks to compel oral testimony as well as the production of these records, and since this motion seeks an order vacating the summons in its entirety, there remains the question of whether petitioner is entitled to plead the Fifth Amendment generally now or whether he must appear personally before the Special Agent for oral examination and raise the Fifth Amendment objection to specific questions as they arise. The law in this area has not been authoritatively settled insofar as tax examinations are concerned. See Redlich, Searches, Seizures, and Self-Incrimination in Tax Cases, 10 Tax Law Rev. 191 (1954–55); Note, Tax Fraud and Self-Incrimination, 3 Syr.L.Rev. 339 (1951–52). Although neither party has specifically raised this question in the instant motion, in light of the unsettled law on this subject, I do not wish to foreclose future consideration of this point by any court should it later be properly raised. Because of the importance of permitting the Internal Revenue Service to examine taxpayers as fully as is permissible under the constitution, I feel that the burden of raising this question at the proper time should rest with petitioner.

The motion to quash the summons will be granted, therefore, only to the extent that the summons seeks the production of the records of the International Commodities Corporation, and the application will be denied without prejudice to the extent that it seeks to vacate that part of the summons which seeks an oral examination of petitioner. So ordered.