**The ELDER–BEERMAN STORES CORP. et al., Plaintiffs,**

**v.**

**FEDERATED DEPARTMENT STORES, INC., et al., Defendants.**

**Civ. A. No. 3316.**

United States District Court
S. D. New York.

Dec. 9, 1968.

---

2. Reasonable expenses may include attorney's fees. *Munson Line*, supra, 6 F.R.D. 470, 475.

Regan, Goldfarb, Powell & Quinn, New York City, for plaintiffs.

Malcolm A. Hoffmann, New York City, for Wright Mfg. Co.

MANSFIELD, District Judge.

Wright Manufacturing Company ("Wright"), a non-party engaged in the manufacture of clothing in Toccoa, Georgia, its principal place of business, moves pursuant to Rule 45(b), F.R.Civ. P., to quash a subpoena served here upon a minor clerical employee. The subpoena would require Wright to transport documents and personnel from Georgia to New York for the taking of depositions of such personnel for use in a pending suit in the Southern District of Ohio. For the reasons stated below, the motion is granted.

The action in the Southern District of Ohio, in connection with which the subpoena was caused to be issued here, was brought by certain Dayton, Ohio, department stores against competitors and their suppliers seeking treble damages for alleged violations of the antitrust laws. Plaintiffs allege, *inter alia,* that defendants induced suppliers to grant lower prices and more favorable terms to defendants than were available to plaintiffs, in violation of § 2(f) of the Robinson-Patman Act, 15 U.S.C. § 13(f). One of the suppliers from whom it is claimed that defendants received preferential treatment is the movant here, Wright, a Georgia corporation with its principal place of business in Toccoa, Georgia. Its only connection with New York is its maintenance of a wholesale display room under the name "Wright Slacks," at the Empire State Building, where it employs one Susan Holzman as a secretary-receptionist. Plaintiffs served upon Miss Holzman a subpoena directed to the "Wright Slacks Corporation" by its corporate secretary for the purpose of conducting a deposition of Wright through certain of its officers and agents. Under the terms of the subpoena Wright would be required to produce these designated individuals for testimony and broad categories of documents described in an annexation to the subpoena.

Since Wright asserts that it does not do business in this district, the initial question is whether or not Wright is subject to the process of subpoena in this district. A foreign corporation doing business in a district is subject to all process, including subpoena, in the district, and if documents are required in response to a subpoena, the court has the power to order their production even though they are physically located outside of the jurisdiction. In re Equitable Plan Co., 185 F.Supp. 57 (S.D.N.Y. 1960), modified, 282 F.2d 149 (2d Cir. 1960). But a corporation not doing business in the district cannot be compelled to respond to such a subpoena. The question of whether a foreign corporation does business within the jurisdiction usually arises in the context of the forum court's being asked to decide whether it has jurisdiction over the corporation as a party defendant rather than as a non-party witness, and, as indicated upon oral argument, a different (and presumably stricter) standard might apply to *non*-party subpoenas. Here, however, it is unnecessary to resolve that issue for the reason that Wright is not sufficiently present in this district to subject it to personal jurisdiction here, much less to service of a subpoena.

In deciding whether a corporation is engaged in business here, we start with the accepted principle that in diversity cases the court first looks to

the law of New York State, Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116 (2d Cir. 1967), cert. denied, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968), and in federal question cases the issue is governed by the "minimum contacts" standard elaborated in International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In searching for an analogy applicable to the instant situation in which a subpoena is directed against a non-party with respect to Ohio transactions, it is appropriate to consider standards developed in cases where the subject matter of the action did not involve the forum state or district. Furthermore, since it appears that recent cases decided by the New York Court of Appeals have extended the concept of "doing business" to at least the limits permissible under *International Shoe,* there is no need to treat the state and federal standards separately. Note, 51 Cornell L.Q. 586 (1966).

Turning to Wright's activities in New York, the Manhattan office where Miss Holzman was served with the subpoena is a wholesale display room located in the Empire State Building; it is identified both in the building directory and on the door as the office of "Wright Slacks." Miss Holzman, according to uncontroverted affidavits, serves as a secretary and receptionist. Occasionally she shows samples which are on display to prospective customers, but any inquiries or orders, however, are forwarded by her to the offices of Wright in Georgia. Her functions appear to be ministerial and non-discretionary. The case in which the most expansive view of doing business has been taken by New York's highest court is Bryant v. Finnish National Airline, 15 N.Y.2d 426, 260 N.Y. S.2d 625, 208 N.E.2d 439 (1965), in which it was held that the defendant airline was doing business in New York although it carried out no flights in the United States. It did maintain a one-and-a-half room office in New York with three full-time and four part-time employees who received reservations which they passed along to the airline's office in Europe. The employees also engaged in publicity work, but had no authority to bind the airline on any kind of contract. The court relied upon all of those facts in holding that the defendant was doing business in New York. Chief Judge Desmond stated:

> "The New York office is one of many directly maintained by defendant in various parts of the world, it has a lease on a New York office, it employs several people and has a bank account here, it does public relations and publicity work for defendant here including maintaining contacts with other airlines and travel agencies and, while it does not make reservations or sell tickets, it transmits requests for space to defendant in Europe and helps to generate business. These things should be enough." (260 N.Y.S.2d at 629, 208 N.E.2d at 441)

In a more recent case, Frummer v. Hilton Hotels International, Inc., 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967), cert. denied, 389 U.S. 923, 88 S. Ct. 241, 19 L.Ed.2d 266 (1968), a similar situation resulted in the same determination where the defendant hotel's New York agent in addition accepted and confirmed reservations. In *Frummer* the court made it clear, however, that mere solicitation of business for an out-of-state concern would not constitute doing business in New York, Miller v. Surf Properties, Inc., 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958), and this conclusion was reached in a federal case involving mere solicitation, MacInnes v. Fontainebleau Hotel Corp., 257 F.2d 832 (2d Cir. 1958), which presents facts similar to those present in this case. In *MacInnes* defendant was a Florida hotel which maintained a New York reservation office with three employees whose duties were to receive requests for reservations which were con-

firmed in Florida, to answer inquiries, and distribute brochures.

Wright's activities in New York fall short of those described in either the *Frummer* or *Bryant* cases, and more nearly resemble those in *MacInnes*. There is no evidence that Wright maintains a bank account in New York; Miss Holzman is paid by check from Georgia. On the basis of the affidavits submitted it appears that Miss Holzman and the New York office serve as a passive conduit for inquiries and orders which are passed on to Georgia. There is no evidence that she is charged with responsibility for publicity, or the maintenance of customer relations, or the generation of business. Her functions are those of a minor, non-discretionary clerical employee. It would be a further extension of existing law to hold on such a basis that Wright was doing business in this district. There is no reason warranting such a result here; indeed, it would seem to be a close question whether any such extension would be constitutionally permissible.

Furthermore even if, at the outer limits of existing law, Wright could be said to be doing business in New York for purposes of the assertion of personal jurisdiction over it by this Court in a case where it was a defendant, it would not automatically follow that a sufficient nexus to permit it to be subject to subpoena as a non-party witness in New York would be established. No policy considerations compel the conclusion that a corporation with only minimal contacts in this district should be compelled to appear for a pretrial deposition as a non-party witness in a civil case which does not in any way relate to this district. To the contrary, the principal reason for the attempted service of the subpoena here rather than in Georgia is that it would suit the convenience of counsel for the parties who would suffer no legally recognizable prejudice by being compelled to conduct their examination of Wright in Georgia. Thus even if Wright were subject to the personal jurisdiction of this Court in a suit brought against it, this Court would be inclined to quash the instant subpoena pursuant to Rule 45(b), F.R.C.P., as unreasonably burdensome to Wright which would be compelled to bring voluminous documents and key personnel from Georgia to New York. The situation calls for application of principles described as follows in Ings v. Ferguson, 282 F.2d 149 (2d Cir. 1960), at p. 152, 82 A.L.R.2d 1397:

"Subpoena power is not absolute. Even if exercised within proper territorial limits, the subpoena may be scrutinized by the courts. Every reason exists for careful scrutiny here. No claim is being made against either bank by any litigant. At most the bank is being called as a witness. The transactions did not originate in the New York Agencies. And the records sought are in the custody of branches in Canada. Under these circumstances it seems highly undesirable that the courts of the United States should countenance service of a subpoena upon a New York agency of a foreign bank which is not a party to the litigation and whose country has provided procedures for securing information, the production of which is consistent with its laws."

For the foregoing reasons the motion is granted, and the subpoena is quashed.

So ordered.