**In re Harvard M. JEE, Debtor.**

**Ronald E. MICHELMAN, Successor Trustee, Plaintiff,**

**v.**

**The HANIL BANK, LTD., a Foreign Banking Corporation, Defendant.**

**The HANIL BANK, LTD., a Foreign Banking Corporation, Cross–Complainant,**

**v.**

**Ronald E. MICHELMAN, Successor Trustee.**

**Bankruptcy No. LA 81–10230–GM. Adv. No. LA 83–9423–GM.**

United States Bankruptcy Court, C.D. California.

July 28, 1989.

Francis J. MacLaughlin, Lillick & McHose, Los Angeles, Cal., for Hanil.

John F. Daum, O'Melveny & Meyers, Los Angeles, Cal., for Korea Exchange Bank.

David R. Weinstein, Danning, Gil, Gould, Diamond & Spector, Los Angeles, Cal., for Trustee.

GERALDINE MUND, Bankruptcy Judge.

On April 13, 1989, the Court heard the motion by The Hanil Bank, Ltd. ("Hanil") to compel Korea Exchange Bank ("KEB") to produce certain documents in the above adversary proceeding. On the record the Court made rulings on all matters except whether KEB could be required to produce documents that are located in branches other than the Los Angeles branch. The Court hereby rules that KEB is to produce all documents concerning loans or other transactions between itself and Harvard M. Jee ("Debtor") or any of the identified companies regardless of their location.

This decision is made on the following basis:

Harvard M. Jee is a debtor in bankruptcy and Ronald E. Michelman ("Trustee") is the Chapter 7 Trustee. Prior to 1981 Hanil extended credit to the Debtor and his corporations and took as security a pledge of stock that the Debtor owned in the First State Bank of Southern California. After the bankruptcy, Hanil obtained relief from the automatic stay to foreclose upon the pledged stock and purchased those shares at a public sale for approximately $10,700,-000.00. KEB unsuccessfully sought to enjoin the Hanil foreclosure, claiming that it had a constructive right on the shares of

stock because it had loaned the Debtor $10,000,000.00 which was used to purchase those shares. It claimed that as collateral for the KEB loan, the Debtor had pledged fake certificates of deposit issued by Metropolitan Overseas Bank.

After the foreclosure took place, KEB dismissed its complaint and the Trustee filed a very similar complaint asserting that it stands in the shoes of KEB and can place a constructive trust on the shares (or the value of those shares). If the $10,700,000.00 in shares is returned to the Trustee, it is not unreasonable that KEB and Hanil will each receive approximately $3,000,000.00 of that amount in distribution from the estate on account of their unsecured claims. These are the two major unsecured creditors of the Debtor. If the Trustee does not prevail, there do not appear. to be substantial assets for distribution and KEB will therefore not be able to achieve meaningful recovery.

Some of the factual issues that the Trustee must establish in order to prevail are that KEB actually relied on the allegedly fraudulent misrepresentations of the Debtor and if so, that such reliance was reasonable. If the trustee is unable to establish either element, the constructive. trust claims will fail. Hanil contends that KEB, both through its manager and because of the history of its dealings with the Debtor, knew or should have known that. the Debtor was not using the money for the stated purpose or that the collateral that it received was fraudulent. Hanil is seeking discovery of the files and business records of KEB concerning its dealings with the Debtor and his various corporations. Although all of the complained of transactions took place in Southern California, Hanil asserts that the Debtor and his corporations had ongoing business relations with KEB in Korea and New York and it seeks those records as well as the records of business dealings in California.

Hanil's subpoena *duces tecum* was issued by the Clerk of the Court on September 9, 1988 pursuant to Federal Rule of Civil Procedure 45(d)(1), and was served on an agent of KEB at their Los Angeles branch on September 21, 1988. The subpoena was directed to the "Custodian of Records of Korea Exchange Bank" and commanded KEB to appear at the law offices of Lillick, McHose & Charles in Los Angeles, California, on October 17, 1988 at 10:00 o'clock a.m. to testify in this proceeding and to bring certain requested documents as set forth in Attachments "A" and "B" of the subpoena. KEB objected to the subpoena on nineteen grounds. Hanil brought a motion to compel discovery at which time the court overruled all nineteen of KEB's objections.

KEB raised an additional objection in its responsive pleading alleging that this court is without jurisdiction to compel the production of any materials requested by the subpoena *duces tecum* which are not located within the Central District of California nor controlled by KEB's Los Angeles branch. The court took this issue under advisement. KEB presents two lines of authority in support of its assertion that the court cannot order it to produce documents located in its Korea or New York branches.

KEB's initial contention is that bank branches are deemed independent from one another and cannot be compelled to produce documents not within the control of the branch served with the subpoena. *In re Harris*, 27 F.Supp. 480, 481 (S.D.N.Y. 1939). The Court in *Harris* concluded that a subpoena *duces tecum* generally reaches all documents under the control of the corporation, but excluded American banks with foreign branches from this rule. "[T]he fact that by section 604 [of the National Banking Act] the accounts of a foreign branch are to be conducted independently of the home office leads to the conclusion that the records of the depositor's account with a foreign branch, not kept here, are not within the control of the main office here as to be subject to production by subpoena *duces tecum* served here." *Harris*, 27 F.Supp. at 481.

However, the Second Circuit, in *First National City Bank of New York v. Internal Revenue Service*, 271 F.2d 616 (2d Cir.1959), held that such a ruling was clear-

ly erroneous and overruled *Harris* to that extent. *First National,* 271 F.2d at 618–19. The Second Circuit stated that section 604 of the National Banking Act is nothing more than a bookkeeping statute designed to make the examination of foreign banking operations easier and was never intended to affect the Federal Rules of Civil Procedure. *Id.* Therefore, each branch of a bank is not, contrary to KEB's assertions, deemed an independent bank for the purpose of discovery.

KEB's other contention is that, even if the branches are not deemed to be independent of one another, a subpoena *duces tecum* served on a branch within the forum district is inoperative as to documents controlled by any branch of the corporation that is located outside the forum district. The leading case in support of this statement is *Cates v. LTV Aerospace Corp.,* 480 F.2d 620 (5th Cir.1973). *See also U.S. Olympic Committee v. Jones,* 693 F.2d 1058, 1060 (11th Cir.1982); *Laker Airways Limited v. Pan American World Airways,* 607 F.Supp. 324, 326 (S.D.N.Y.1985); *Marcoux v. Mid–States Livestock,* 66 F.R.D. 573, 580 (W.D.Mo.1975); *Security Mortgage Investors v. Hicks* (*In the Matter of North American Acceptance Corp.*), 21 Fed.R.Serv.2d 612, 616 (N.D.Ga.1975).

In *Cates,* a subpoena was directed to the United States Navy and served within the forum district on the Commanding Officer of the Dallas Naval Air Station. The subpoena requested an Aircraft Accident Report, which was located in Virginia, of a plane crash in Hawaii. Pursuant to Navy regulations, the report was in the control and custody of the Secretary of the Navy in Washington, D.C.

■ The Fifth Circuit concluded that there is nothing in Rule 30(b)(6) that vests a court with the power to compel the production of documents from an entity that is beyond the reach of Rule 45(d)(2). The Court stated:

> We find nothing in Rule 30(b)(6) which would vest a court issuing a subpoena with the power to require that documents, in the custody and control of the head of an agency located outside the judicial district, be brought into the judicial district. Similarly, a person designated by an organization pursuant to Rule 30(b)(6) could not be required to travel outside the limits imposed by Rule 45(d)(2). In short, Rule 30(b)(6) provides a procedure to use in determining the proper person to depose. It does not deal with the issue of where the deposition is to be taken or where the documents are to be produced. This is reserved to Rule 45(d)(2).

*Cates,* 480 F.2d at 623.[1]

The only opinion that is contrary to the holding in *Cates* is *Ghandi v. Police De-*

---

1. The Fifth Circuit, in an attempt to bolster its analysis of Rules 30(b)(6) and 45(d), continued to state "that under the traditional notions of power and jurisdiction, a court cannot order production of records in the custody and control of a non-party located in a foreign judicial district." *Cates v. L.T.V. Aerospace Corporation,* 480 F.2d 620, 623 (5th Cir.1973). While it is true that a court can never order persons over whom it has no jurisdiction to comply with a subpoena *duces tecum, Cates* implies that a court cannot enforce a subpoena where the court has jurisdiction over a non-party located outside the forum district.

    *Cates* cites *Chessman v. Teets,* 239 F.2d 205, 213 (9th Cir.1956), and *Elder–Beerman Stores Corp. v. Federated Department Stores, Inc.,* 45 F.R.D. 515, 516 (S.D.N.Y.1968) as a basis for this proposition. In *Chessman,* which involved an application for writ of *habeas corpus,* the applicant alleged on appeal that the trial court denied him the right to a fair trial by not permitting him to subpoena the custodians of record for various government agencies, most of whom resided in Los Angeles. The court concluded that it lacked the authority to compel production of records since the persons who were to be subpoenaed did not reside within forty miles of San Francisco, the place of the hearing on the subpoena. *Chessman,* 239 F.2d at 213 (citing *Merchant Bank of New York v. Grove Silk Co.,* 11 F.R.D. 439, 440 (M.D.Penn.1951)). The *Chessman* holding was extremely limited, dealing only with the production of documents at a geographically remote site. It does not support the proposition that an entity subject to the jurisdiction of this court cannot be compelled to produce documents located outside of the forum district.

    The *Elder–Beerman* case involved a subpoena issued by the New York District Court on a Georgia corporation's only New York office. The function of the New York office was to maintain a sales showroom and they employed a secretary-receptionist for that limited purpose. The court concluded that it did not have juris-

*partment of the City of Detroit,* 74 F.R.D. 115 (E.D.Mich.1977).[2] The Michigan District Court, in *Ghandi,* was faced with a set of facts similar to those presented in *Cates,* but found unpersuasive the holding and rationale set forth in that case. In *Ghandi* a subpoena *duces tecum* was directed to the F.B.I. and served on the F.B.I.'s Detroit field office. The subpoena requested the production of documents in the custody of the F.B.I. regardless of their location. The court reasoned that if they had jurisdiction over the F.B.I. through the presence of its Detroit field office within the forum district, then any document within the control of the F.B.I., regardless of its situs, was subject to their subpoena power pursuant to Rule 45(d). *Ghandi,* 74 F.R.D. at 120. The Court stated:

> The F.B.I. has a large and active field office within the district.... The number of F.B.I. personnel here, the wide scope of their activities, and the unitary structure of the organization, all lead this court to conclude that service upon the Bureau in this district was proper, and the Court has jurisdiction to compel production of the documents within the custody and control of the Bureau though these documents may be located outside of the district.

*Ghandi,* 74 F.R.D. at 121–22.

█ While it is true that a majority of the courts that have considered this issue support *Cates,* the holdings in *Cates* and its progeny are not binding upon this court. The doctrine of stare decisis does not compel this Court to follow the decisions of district courts in other districts (*Starbuck v. City & County of San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir.1977)) or the court of appeals in other circuits. *Notto v. U.S.,* 598 F.Supp. 440, 442 n. 6 (D.C.N.J.

1984); *Maher v. Zapata Corp.,* 490 F.Supp. 348, 352 (S.D.Tex.1980), *aff'd,* 714 F.2d 436 (5th Cir.1983); and 1B Moore's Federal Practice ¶ 0.402[1] at 16 n. 22. Therefore, absent Ninth Circuit authority to the contrary, this court finds persuasive and follows the construction given Rule 45(d) by *Ghandi.*

Whether this court can and should compel the production of the documents requested by Hanil in the subpoena *duces tecum* that was served on KEB depends on (1) whether this court has jurisdiction over KEB by service of a subpoena on an agent of the bank, (2) whether KEB controls the subpoenaed documents, and (3) whether an order to produce the subpoenaed documents is appropriate under the facts of this case. *See generally* 5A Moore's Federal Practice ¶ 45.05[2] at 45–33.

█ The initial query is whether this court has jurisdiction over KEB. Personal jurisdiction over a non-party served with a subpoena *duces tecum* is obtained by a court pursuant to Rule 45(c). *Ghandi,* 74 F.R.D. at 120; *Elder–Beerman Stores Corp. v. Federated Department Stores, Inc.,* 45 F.R.D. 515, 516 (S.D.N.Y.1968). If the non-party named in the subpoena is a corporation, as opposed to an individual, that corporation is amenable to service in any forum within which the corporation has sufficient minimum contacts. *Ghandi,* 74 F.R.D. at 121 (citing *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see also Helicopteros Nacionales de Columbia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Minimum contacts is not disputed in this case as KEB has been engaged in the business of banking in the Los Angeles area for several years and their contacts within

diction over the Georgia corporation because it failed to meet the minimum contacts test. *Elder–Beerman,* 45 F.R.D. at 527. Since the New York court did not have jurisdiction, it ordered that the subpoena be quashed. As in *Chessman,* there is no indication that the *Elder–Beerman* court dealt with authority to compel the production of documents located outside the forum if the court has obtained jurisdiction over the deponent. *Id.* at 516. *See also In re Uranium Antitrust Litigation,* 480 F.Supp. 1138, 1145

(N.D.Ill.1979); *Ghandi v. Police Department of the City of Detroit,* 74 F.R.D. 115, 119 (E.D.Mich. 1977); and *In re Harris,* 27 F.Supp. 480, 481 (S.D.N.Y.1939). Hence, the conclusion arrived at by the Fifth Circuit in *Cates* is unsupported by the cases it cites.

**2.** *Hecht v. Don Mowry Flexco Parts, Inc.,* 111 F.R.D. 6, 11 n. 4 (N.D.Ill.1986) does, however, cite *Ghandi* with approval.

this district have been continuous and systematic. Furthermore, the documents requested by Hanil arise out of and are related to the litigation by virtue of the fact that KEB's Los Angeles branch made the loan that has given rise to this adversary proceeding. Consequently, KEB is doing business within the forum district and is subject to the jurisdiction of this court. *See Elder–Beerman*, 45 F.R.D. at 516.

The next query is whether KEB has actual control over the subpoenaed documents.

> The force of a subpoena for production of documentary evidence generally reaches all documents under the *control* of the person or corporation ordered to produce.... It makes no difference that a particular document is kept at a place beyond the territorial jurisdiction of the court that issues the subpoena. The test is one of *control*, not of location.

5A Moore's Federal Practice ¶ 45.05[2] at 45–29 (emphasis in original). There is no dispute as to whether KEB actually controls the subpoenaed documents since those documents are the corporate records of KEB. Furthermore, KEB never asserted that the requested documents were not within their control. The only objection raised by KEB is that some of the requested documents are located in New York or Korea and therefore are not controlled by the Los Angeles branch.

█ This court, however, does not choose to limit the meaning of the word "control" to only those documents located within the forum district and controlled by the entity that was physically served with the subpoena. *But cf. Cates*, 480 F.2d at 623. Instead, this court is of the opinion that such a limitation is improper in light of Federal Rules of Civil Procedure 1 and 30(b)(6). Rule 1 directs the courts to construe these rules so as "to secure the just, speedy, and inexpensive determination of every action." Hence, it is unjustified to assume that Rule 45 requires Hanil to serve KEB in every judicial district that might contain relevant documents. *See Ghandi*, 74 F.R.D. at 122.

The only construction of Rule 45(d)(1) which is consistent with Rule 1 is that a subpoena *duces tecum* issued pursuant to Rule 45(d)(1) directs the deponent to produce for inspection and copying the documents within its custody named in the subpoena regardless of where the documents are actually located.

*Id.*

Moreover, Rule 30(b)(6) was added to the Federal Rules to "curb the bandying by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of the facts that are clearly known to the persons within the organization." Fed.R.Civ.P. 30 Notes of the Advisory Committee on Rules (1970 Amendment, Subdivision (b)(6)). If this court were to follow the holding of *Cates* the bandying would not necessarily stop. Various branches of the corporation might have to be deposed successively until the party conducting the deposition discerns which branch controls the subpoenaed documents. This is especially true where, as here, the head of the local branch may lack knowledge of, or be unable to produce on his own authority, the subpoenaed documents that are located outside the forum district.

In addition, documents may be moved from one branch to another in an attempt to avoid jurisdiction. *See Marcoux*, 66 F.R.D. at 580. This is of particular import where, as in the instant case, the subpoenaed entity is a non-party foreign corporation with domestic branches. In such an instance the court may never be able to compel production of the subpoenaed documents since the corporate records could easily be stored or sent to a foreign country. In short, the holding in *Cates* completely ignores the dictates of Rule 1, and does little to improve the situation that Rule 30(b)(6) seeks to remedy.

█ Therefore, the only remaining query is whether it would be appropriate for this court to compel KEB to produce the documents requested by Hanil. This court's discourse of this issue is limited to where the discovery is to take place since all other issues regarding the appropriateness of the

subpoena were resolved at the April 13, 1989 hearing. Rule 45(d)(2) states:

> A person to whom a subpoena for the taking of a deposition is directed may be required to attend at any place within 100 miles from the place where that person resides, is employed or transacts business in person, or is served, or at *such other convenient place as is fixed by an order of the court.*

Fed.R.Civ.P. 45(d)(2) (emphasis added). As such, this court may resolve any unfair burden a non-party witness may have by virtue of the location of the deposition and the lack of actual contacts with the forum district by ordering that the discovery take place in a more convenient and appropriate location.

▮ KEB has substantial actual contacts with the forum district by virtue of the fact that it is doing business within Los Angeles and since KEB filed a state court action in the Los Angeles Superior Court, which was substantially identical to the trustee's adversary motion in this adversary proceeding, and would have fully litigated those issues in that court if the Debtor had not subsequently filed his bankruptcy petition. Hence, there does not seem to be any unfair burden placed on KEB by allowing the discovery to take place in Los Angeles. Furthermore, the fact that some of the documents may be located in Korea or New York, and the deposition is to take place in Los Angeles, is not relevant since KEB has failed to suggest a more convenient location within which to conduct the deposition. Therefore, there is no viable reason why this court should not compel the production of the documents requested by Hanil in their subpoena *duces tecum* as modified by the court at the April 13, 1989 hearing.

▮ KEB further claims that even if this court could enforce the subpoena it should decline to do so with respect to those documents located in Korea since discovery of those documents would be in violation of Korean law, to which both Hanil and KEB are subject. The fact that the documents are located in a country where their discovery would be illegal does not mean that a United States court is without the author-

ity to compel the production of subpoenaed documents. *Societe Internationale v. Rogers,* 357 U.S. 197, 206–07, 78 S.Ct. 1087, 1092–93, 2 L.Ed.2d 1255 (1958); *In re Societe Nationale Industrielle Aerospatiale,* 782 F.2d 120, 126 (8th Cir.1986); *United States v. First National City Bank,* 396 F.2d 897, 901 (2nd Cir.1968); *International Society for Kirshna Consciousness v. Lee,* 105 F.R.D. 435, 445 (S.D.N.Y.1984); and *In re Uranium Antitrust Litigation,* 480 F.Supp. 1138, 1145 (N.D.Ill.1979).

This court, however, declines to resolve the issue of illegality raised by KEB. KEB presented no admissible evidence of the existence of a Korean statute making the requested discovery illegal and gave no notice in its response to Hanil's motion to compel discovery of an intent to use foreign law. *See* Fed.R.Civ.P. 44.1. KEB has the burden of proving that a Korean law bars discovery (*United States v. Vetco, Inc.,* 691 F.2d 1281, 1289 (9th Cir.1981)), and since KEB has failed to meet that burden, the objection must be denied.

▮ An additional query presented by the facts of the instant case, although not raised by the parties, is whether KEB should be treated as a party for the purpose of discovery.

Several courts have concluded that a non-party could be compelled to comply with discovery requests made pursuant to Rule 34 where the non-party has a substantial interest in the litigation and is playing the role of a party. *Natta v. Hogan,* 392 F.2d 686, 691 (10th Cir.1968) (the assignee of a patent is subject to discovery as a party where the assignor and another party are both applicants before the patent office); *Compagnie Francaise D'Assureance Pour Le Commerce Exterieur v. Phillips Petroleum Company,* 105 F.R.D. 16, 33–34 (S.D.N.Y.1984) (discovery from the French government was allowed since the plaintiff was deemed to be the agent of the government by virtue of the fact that the government would receive any award that the plaintiff would receive in the action); and *Wilson v. David,* 21 F.R.D. 217, 218–19 (W.D.Mich.1957) (discovery from a non-party liability insurance carrier was allowed

since the insurance carrier is playing the exact role of an actual party to the litigation); *see also Bingle v. Liggett Drug Co.,* 11 F.R.D. 593, 593–94 (D.Mass.1951); and *Simper v. Trimble,* 9 F.R.D. 598, 599–600 (W.D.Mo.1949).

KEB has filed an unsecured claim in excess of $10,000,000.00 and only if the trustee prevails against Hanil will KEB receive a meaningful recovery (estimated to be approximately $3,000,000.00). In fact the allegations filed by the trustee in this adversary proceeding are very similar to those filed by KEB in the California Superior Court prior to the filing of this Chapter 7 case. The trustee only became involved by virtue of the bankruptcy petition and section 544(b) of the Bankruptcy Code.[3] Therefore, KEB has a substantial interest in this adversary proceeding.

If KEB were deemed to be a party for the limited purpose of conducting discovery, then Hanil would no longer have to depend upon subpoenas to conduct their discovery, but would only have to rely on the normal discovery rules, Federal Rules of Civil Procedure 26 through 37 (Bankruptcy Rules 7026 through 7037). But since Hanil has not brought a motion requesting that KEB be deemed a party for the purpose of conducting discovery this court declines to resolve that issue at this time. However, the direct benefit that flows to KEB in this action must be taken into consideration in determining the scope of the appropriate discovery.

IT IS THEREFORE ORDERED:

THAT KEB is to produce all documents concerning loans or other transactions between itself and Harvard M. Jee or any of the identified companies managed/owned by Harvard M. Jee regardless of their location on or before September 7, 1989.

---

**3.** Section 544(b) permits the trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an [allowed] unsecured claim...." 11 U.S.C. § 544(b). Hence, the trustee has stepped into the shoes of KEB to assert the claims that KEB has in relation to the transfer of stock from the debtor to Hanil.