McKESSON CORPORATION, et al., Plaintiffs,

v.

ISLAMIC REPUBLIC OF IRAN, et al., Defendants.

No. Civ.A. 98–00220(TAF).

United States District Court, District of Columbia.

March 17, 1999.

Mark N. Bravin, Dorothy J. Black, Morgan Lewis & Bockius, Washington, D.C., Mark Joelson, Washington, D.C., for plaintiffs.

Thomas G. Corcoran, Jr., Mary–Ellen Noone, Washington, D.C., for defendant Iran.

## MEMORANDUM OPINION

FLANNERY, District Judge.

Currently pending before the court is plaintiffs' Motion to Compel Discovery. The motion to compel relates to three specific matters. They are (1) plaintiffs' request pursuant to Rule 34(a) of the Federal Rules of Civil Procedure that defendant Iran permit the plaintiffs' expert witness, Mr. Reilly, and a translator, to visit Pak Dairy in Iran to inspect facilities, equipment, and machinery as may be relevant to the valuation of Pak Dairy in 1982; (2) plaintiffs' December 24, 1998 deposition notice pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, which asks defendant Iran to produce witnesses competent to testify as to several valuation related issues; and (3) plaintiffs' request that defendant Iran remedy its incomplete responses to six of plaintiffs' interrogatories and provide full and complete responses within 10 days. The basis for plaintiffs' motion is Rule 37 of the Federal Rules of Civil Procedure. After carefully considering the motion to compel, especially with regard to the international comity issues inherent in a motion to compel directed to a foreign sovereign, this court, with minor exception, grants the plaintiffs' motion to compel.

## I. The Parties' Contentions

(1) The Inspection Request Pursuant to Rule 34(a).

Plaintiffs ask this court to compel defendant Iran's cooperation with plaintiffs' request, pursuant to Rule 34(a) of the Federal Rules of Civil Procedure, that defendant Iran permit the plaintiffs' expert witness, Mr. Robert Reilly, and a translator, to visit Pak Dairy in Iran to inspect facilities, equipment, and machinery as may be relevant to the valuation of Pak Dairy in 1982. Defendant Iran's expert witness on valuation, Mr. Anatole Richman, recently visited Pak Dairy in Iran for this purpose. Plaintiffs contend that they should be allowed equal access to the information and facilities relevant to the valuation question. They point out that they made an informal request that Iran allow Mr. Reilly to accompany Mr. Richman, but this request was denied. According to the plaintiffs, it would be impossible for Mr. Reilly and a translator to visit Pak Dairy in Iran without defendant Iran's cooperation because of Iran's restrictions on foreign visitors.

Plaintiffs argue that Iran has refused all requests to allow Mr. Reilly to visit.

Iran disputes the propriety of the plaintiffs or this court requiring Iran to allow foreign litigants into Iran for the purpose of examining properties located in Iran. Iran argues that "there are no diplomatic relations between the United States and Iran, and that the United States' policy towards Iran is hostile." Iran's Opposition to the Motion to Compel at 2 (Feb. 11, 1999). Iran contends that this court lacks the power to compel a foreign sovereign, even a party in a pending lawsuit over which this court has lawful jurisdiction, to admit a United States national into its territory. Iran argues that in light of these facts, this court should deny the plaintiffs' motion to compel as a matter of law. Iran also cites the absence of caselaw on this issue as supporting its position. Moreover, Iran contends that there is no support for plaintiffs' request in Rule 34(a) of the Federal Rules of Civil Procedure.

(2) Iran's Failure to Designate Witnesses Competent to Testify Regarding Twelve Valuation Related Issues.

Plaintiffs argue that they have previously filed a Rule 30(b)(6) notice on Iran regarding witnesses competent to testify as to 12 valuation related items. These items are (items 1–9) Pak Dairy's financial position, operations, contracts, copyrights, trademarks, business plans, investments, franchises, exemptions, subsidies, production levels, capacity, planned expansions, distribution systems, and competitive position in years 1979–1982; (item 10) all efforts made by Iran to locate, obtain, and produce documents in its possession or documents in the possession of entities controlled by Iran; (item 11) the valuation used by Pak Dairy's shareholder entities to account for Pak Dairy shares on their financial statements and reports; and (item 12) how each shareholder entity valued Pak Dairy shares from 1979–82. In their present motion, the plaintiffs ask the Court to compel Iran to produce appropriate witnesses.

Plaintiffs argue that Iran's response to plaintiffs' Rule 30(b)(6) notice has been insufficient. With respect to items 1–9 in the Rule 30(b)(6) notice, plaintiffs point out that Iran has merely stated that Pak Dairy *might* produce Pak Dairy's accountant, Mr. Alireza Dadyar, in the Hague in late March or early April, "assuming Pak Dairy is ultimately willing to produce Mr. Dadyar and that he is willing to come." Exhibit E, Iran's January 27, 1999 Letter. Plaintiffs argue that this noncommittal approach is inconsistent with the purpose of Rule 30(b)(6), especially in light of the rapidly approaching June 1, 1999 deadline for the completion of discovery in this case.

Plaintiffs also point out that their Rule 30(b)(6) notice called for the taking of depositions in Washington, D.C., the location of the counsel for Iran and plaintiffs, and the location where the action is pending. Nevertheless, Iran has only offered to make Mr. Alireza Dadyar available in the Hague, or in the alternative London. Plaintiffs ask the court to order Iran to make Mr. Dadyar available in Washington, D.C., not the Hague or London as proposed by defendant Iran. In support of this position, plaintiffs discuss the additional cost for travel by both counsel to the Hague or London, the additional cost of transporting relevant documents located in Washington, D.C. to the Hague or London, and the difficulties inherent in finding English-speaking court reporters and Farsi–English translators in the Hague. Plaintiffs also point out that based on the nature of this litigation, it is foreseeable that disputes may arise during the deposition, and that if these depositions are taken in the Hague or London then the availability of the court to resolve these disputes will be severely diminished due to time zone differences.

Plaintiffs' motion to compel also discusses the parties' attempts to reach an accommodation regarding the deposition of Ms. Nasrin Niktash, Legal Adviser of the Bureau of International Legal Services. Plaintiffs inform the court that Iran has offered to make Ms. Niktash available for a telephonic deposition from Tehran with regard to item 10 of plaintiffs' Rule 30(b)(6) notice. Plaintiffs indicate that this arrangement is acceptable, provided that Iran stipulates to the authenticity and admissibility of each of the documents that it has produced. Plaintiffs argue that without this accommodation by Iran, it

will be very difficult for plaintiffs to accept Iran's proposal for a telephonic deposition because that mode of deposition will make it extremely difficult to depose Ms. Niktash with regard to the documents produced under her direction.

Plaintiffs note that with regard to items 11 and 12 in the Rule 30(B)(6) notice, Iran has not designated any witness competent to testify. According to plaintiffs, Iran has also failed to designate a witness competent to testify on item 10 with regard to the documents that Mr. Richman brought back with him from Iran.

In response, Iran offers several arguments. First, with regard to the deposition location for Mr. Dadyar, Iran contends that it offered the Hague or London as proposed deposition sites in response to a communication from plaintiffs' counsel, which indicated that although Washington, D.C. had been designated as the deposition location in the Rule 30(b)(6) notice, a European location such as London might be acceptable. Defendant argues that Iran is the best location for the deposition because that location will permit Mr. Dadyar to locate documents if necessary and because Farsi translators are readily available in Iran. Iran further contends that it is disingenuous of the plaintiffs to propose London as an acceptable location and then move to compel a deposition in Washington, D.C. Iran contends that its responses regarding Mr. Dadyar have been more than reasonable and that a deposition in late March or April is sufficiently in advance of trial.

Second, with regard to the deposition of Ms. Niktash, Iran contends that the parties do not clearly disagree on this matter and that therefore a motion to compel is premature. Iran also argues that it is willing to stipulate to the authenticity of specific documents, provided that (1) plaintiffs identify the documents in question and (2) plaintiffs agree to stipulate to the admissibility and authenticity of the documents that Iran seeks to offer into evidence.

Third, with regard to the designation of witnesses from the shareholder entities, Iran contends that these entities no longer stand in a principal-agent relationship with Iran and that therefore Iran cannot designate such witnesses nor compel their appearance at a deposition. Iran argues that this court incorrectly found that the agency relationship existed in 1982 and that there has never been a finding that the shareholder entities and Iran stand in a principal-agent relationship in 1999.

Fourth, Iran points out that this situation is rather unique in that the organization or governmental agency to which the Rule 30(b)(6) notice was directed is a foreign sovereign. Moreover, Iran argues that the United States maintains a hostile relationship with Iran.

## (3) The Dispute Regarding Plaintiffs' Six Interrogatories

Plaintiffs argue that Iran has failed to adequately respond to six of the plaintiffs' interrogatories. Plaintiffs note that these interrogatories were intended to narrow the issues regarding the valuation of Pak Dairy and to determine which persons within defendants' control have knowledge of Pak Dairy's value at the time of expropriation for purposes of planning for depositions.[1] Plain-

---

1. The interrogatories in question are as follows:
 1. Identify the income, expenses, taxes, profits or losses of Pak Dairy for fiscal years 1979 through 1982.
 2. Identify all persons whom you believe have knowledge concerning the value of Pak Dairy's common shares of stock as of April 1982, and describe generally the knowledge you believe each person has about the value.
 3. Identify all persons whom you believe have knowledge concerning the commercial operations, competitive position or financial status of Pak Dairy as of April 1982, and describe generally the knowledge you believe each person has about each of these subjects.

 4. State what Iran contends to be the value of Pak Dairy and its common stock and shareholders' equity as of April 1982; state the basis for those values; and identify the persons whom you believe have knowledge of how those values were determined.
 5. Identify all documents that are directly responsive to each of the requests numbered 1 through 27 in Plaintiffs' First Request for the Production of Documents Addressed to Defendant the Islamic Republic of Iran Concerning Damages (dated October 9, 1997).
 6. Identify all witnesses, including expert witnesses, you intend to call at trial, and for each witness state the subject matter upon which

tiffs argue that Iran's objections to these interrogatories are without merit. According to plaintiffs, Iran's basis for objecting to the interrogatories is that Iran does not have the power to control Pak Dairy, nor any first-hand knowledge or information. The plaintiffs argue that this contention is flatly contrary to the past rulings of this court and the Court of Appeals.

Furthermore, according to the plaintiffs, Iran has failed to identify all persons with appropriate knowledge of several valuation related issues. Plaintiffs point out that the only individuals identified by Iran as having knowledge of these issues are Iran's expert witnesses and one of these experts was retained solely for litigation and has no first-hand knowledge of the relevant issues. Plaintiffs argue that in an operation as large as Pak Dairy, which has been listed on the Tehran stock exchange for many years, more than two people must have knowledge of the "commercial operations, competitive position or financial status of Pak Dairy as of April 1982." Interrogatory No. 3.

Plaintiffs also point out that Iran's response to Interrogatory No. 5 is incomplete. According to plaintiffs, Iran has responded to this interrogatory by referring to business records previously produced by Iran, presumably because the information sought may be derived from the business records and it will be equally burdensome for either party to search these records for the necessary information. However, plaintiffs complain that Iran has failed to comply with Rule 33(d) of the Federal Rules of Civil Procedure by specifically designating the documents from which the relevant information may be gleaned. Instead, Iran has merely referred to the business records. Thus, plaintiffs request that the court compel Iran to answer plaintiffs' interrogatories fully and completely.

Iran contends that its responses to Interrogatories 2 & 3 are sufficient because they indicate the two persons who in all probabili-

ty have the best knowledge of the information sought by plaintiffs. Iran contends that plaintiffs inappropriately criticize Iran's other interrogatory responses by focusing on Iran's use of the word "believe," which was called for by the phrasing of interrogatory question. Iran also argues that its reference to business records in response to interrogatory No. 5 was sufficiently particular to satisfy the requirements of Rule 33.

## II. Discussion

(1) The Inspection Request Pursuant to Rule 34(a).

After carefully considering the arguments advanced by both parties on this issue, the court grants the plaintiffs' motion to compel. In granting the plaintiffs' motion to compel, the court is mindful of the unique nature of this case and the special considerations inherent in directing a motion to compel to Iran. Nevertheless, the court strongly believes that its resolution of this issue is necessary to ensure a fair and just adjudication of this dispute.

Rule 37(a)(2)(B) permits a discovering party to file a motion for an order compelling inspection if another party fails to respond to a Rule 34 inspection request, provided that the motion includes a certification that the movant has in good faith conferred or attempted to confer with the party failing to allow the inspection. *See* Fed.R.Civ.P. 37(a)(2)(B). The court is satisfied that the prerequisites to seeking a motion to compel have been met.

■■ Rule 34(a) of the Federal Rules of Civil Procedure provides that

[a]ny party may serve on any other party a request ... to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspecting and measuring, surveying, photographing, testing, or sampling the proper-

the witness is expected to testify, the substance of the facts and opinions upon which the witness is expected to testify, and provide a summary of the grounds for each of the opinions of the expert witnesses.

Exhibit C to Plaintiffs' Motion to Compel Discovery at 3–4.

ty or any designated object or operation thereon, within the scope of Rule 26(b). Fed.R.Civ.P. 34(a)(2). Prior to 1970, "good cause" was a prerequisite to any discovery under this provision. *Minnesota Mining & Manufacturing Co. v. Nippon Carbide Indus. Co.*, 171 F.R.D. 246, 248 (D.Minn.1997). However, as amended, a party's request comes within the coverage of Rule 34(a)(2) "if the proposed entry and inspection are within the scope of Rule 26(b)." *Id.* at 248 (internal quotations omitted) (citing *Cuno Inc. v. Pall Corp.*, 116 F.R.D. 279, 281 (E.D.N.Y.1987); *Eirhart v. Libbey–Owens–Ford Co.*, 93 F.R.D. 370, 371 (N.D.Ill.1981)). Rule 26(b) generally provides for the discovery of all nonprivileged information that is relevant to the pending action. Fed.R.Civ.P. 26(b).

■ Nevertheless, relevant inspections may be objected to on any basis that would support a Rule 26(c) protective order; namely annoyance, embarrassment, oppression, or undue burden or expense. *Minnesota Mining & Manufacturing Co.*, 171 F.R.D. at 248 (citing 8A Charles Alan Wright, Richard L. Marcus, Federal Practice and Procedure: Civil 2d § 2213 at 428 (1994) (citing 1970 Advisory Committee Note to Rule 33(a) (a responding party "may choose to seek a protective order under new rule 26(c)"))). When a responding party exercises this right and objects to a Rule 34(a) request, the court should balance the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection. *See New York State Assoc. for Retarded Children, Inc. v. Carey*, 706 F.2d 956, 960 (2nd Cir.1983); *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir.1978) (where entry onto land is sought, "the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection"); *Minnesota Mining & Manufacturing Co.*, 171 F.R.D. at 248; 1970 Advisory Committee Note to Rule 34(a) of the Federal Rules of Civil Procedure ("an appraisal of 'undue' burden inevitably entails consideration of the party seeking discovery").

■ In the present case, the inspection requested by the plaintiffs will clearly "aid in the search for truth" and may be essential to a fair resolution of this case in light of the recent visit to Pak Dairy of Iran's expert witness on damages. This case is far different from those cases in which courts have denied inspection requests pursuant to Rule 34. Here, there is no allegation by defendant Iran that this inspection request is being used to harass the defendant. *Cf. Stiller v. Arnold*, 167 F.R.D. 68, 71 (S.D.Ind.1996) (discussing the potential of parties using Rule 34 requests to harass); *Haynes v. Shoney's, Inc.*, 1991 WL 354933, *1–2 (N.D.Fla. Sept. 27, 1991) (party sought protective order because of alleged use of Rule 34 request to harass). Nor is there any allegation that the information sought is irrelevant, or even unimportant. *Cf. Penthouse International, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 382 (2nd Cir.1981) (party opposing a motion to compel with regard to Rule 34 alleged that the information sought was irrelevant); *Traina v. Blanchard*, 1998 WL 178762, *2 (E.D.La. Apr. 15, 1998) (documents sought in Rule 34 request were "seemingly irrelevant"). In fact, defendant Iran considered an inspection of Pak Dairy so important that it warranted Iran incurring the cost of sending its own expert, Mr. Richman, to Iran to inspect Pak Dairy. Thus, the evidence sought in the Rule 34 request is vital to the resolution of this matter and the utility of this inspection in producing relevant information cannot in good faith be contested by Iran in light of Mr. Richman's recent visit.

Nevertheless, this court is well aware of the unique and burdensome nature of the plaintiffs' request. Here, plaintiffs' Rule 34 request not only involves entry upon the property of Pak Dairy (an issue often contested in cases dealing with Rule 34), but also entry into a foreign nation (an issue not addressed in any of the cases that the court has been able to locate). Iran also clearly believes that the plaintiffs are not entitled to visit Iran or Pak Dairy.[2] Furthermore, the

---

**2.** However, this position is inconsistent with Iran's argument that Iran is the best location at which to conduct a Rule 30(b)(6) deposition of Mr. Dadyar. A Rule 30(b)(6) deposition of Mr. Dadyar in Iran would necessarily entail Iran allowing the plaintiffs' attorneys and interpreters

court is aware of the history of tenuous relations between the United States and Iran, a fact that has caused this court to grant the defendant a great deal of latitude throughout this litigation.

However, it is the court's belief that granting the motion to compel is necessary for a fair resolution of the valuation issue, which is in turn closely related to the issue of compensation. In weighing the competing interests in the present motion to compel, the court is convinced that although Iran has a valid right to determine who may enter its borders, it cannot exercise this right in a discriminatory manner that will rob the plaintiffs of fair process in the resolution of this case. Despite the fact that defendant Iran is a sovereign nation, it still must comply with the reasonable burdens imposed on it in defending this suit. *See First City v. Rafidain Bank*, 150 F.3d 172, 176–77 (2nd Cir.1998) (Iraqi central banking authority subject to discovery requests of American bank); *In re Sealed Case*, 832 F.2d 1268, 1283 (D.C.Cir.1987) ("although courts recognize comity as an important objective, there is little doubt that 'a United States Court has the power to order any party within its jurisdiction to testify or produce documents regardless of a foreign sovereign's views to the contrary'") (quoting *In re Anschuetz & Co.*, 754 F.2d 602, 613 n. 28 (5th Cir.1985)). *Minnesota Mining & Manufacturing Co.*, 171 F.R.D. at 249 (a Japanese corporation properly within the jurisdiction of a federal court must accede to the discovery burdens imposed by the American judicial process and Rule 34 despite the importance of international comity). *See also Filus v. Lot Polish Airlines*, 907 F.2d 1328 (2nd Cir.1990) (plaintiff is entitled to discovery requests with regard to jurisdiction even if the defendant is the Union of Soviet Socialist Republics and jurisdiction has not yet been established). Iran's position in this matter is patently unfair. According to Iran, this court must stand idly by while Iran allows its own expert to visit and in-

spect Pak Dairy, but deny the same opportunity to the plaintiffs. This is unfair and would seriously impair the ability of this court to reach a just determination on the question of damages. The court rejects this position and instead finds that the burdens imposed on Iran in allowing the plaintiffs' inspection request are substantially outweighed by the need for this inspection.

 Furthermore, the court explicitly rejects defendant Iran's argument that Iran may refuse to comply with the plaintiffs' Rule 34 request because Iran allegedly lacks control over Pak Dairy in 1999. This court has previously found, and in Iran's numerous motions for reconsideration, reaffirmed, that Iran and Pak Dairy stand in a principal-agent relationship. Iran now attempts to argue that this relationship has not been proven to exist in 1999, contrasting the present situation with the entities' relationship in 1982. Although a party seeking to compel a Rule 34 inspection normally bears the burden of establishing control over the relevant land or facilities through a principal-agent relationship or otherwise, *see United States v. International Union of Petroleum & Industrial Wkrs.*, 870 F.2d 1450, 1452 (9th Cir. 1989); *Florentia Contracting Corp. v. RTC*, 1993 WL 127187, * 3 (S.D.N.Y.); *Camden Iron and Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438 (D.N.J.1991), the court believes that a different standard is appropriate in this case. Since this court has already found the existence of a principal-agent relationship, it is appropriate to place the burden on Iran to disprove an inference that this relationship persists, rather than requiring the plaintiffs to once again show the existence of an agency relationship.[3]

 Iran argues that it has come forth with such evidence, citing pages 6–11 in its 11/2/98 Opposition to the Motion to Compel. However, after reviewing this material, the court remains convinced that Iran and Pak Dairy continue to maintain a principal-agent relationship and finds no evidence that would

into Iran for the deposition. This fact undercuts the force of Iran's sovereignty argument with regard to the Rule 34 inspection.

3. If the court accepted defendant Iran's theory, it might be forced to hold repetitive hearings regarding control every time plaintiffs sought discovery or pursued their case in any material way. The court finds this preposterous.

cause the court to reconsider its previous determination of a principal-agency relationship. Moreover, while the control required for Rule 34 purposes may be established by virtue of a principal-agent relationship, *see Addamax Corp. v. Open Software Foundation, Inc.*, 148 F.R.D. 462, 465 (D.Mass.1993) (citing *Gerling International Ins. Co. v. Commissioner of Internal Revenue*, 839 F.2d 131, 141 (3rd Cir.1988)), a Rule 34 request only requires a showing of control, not proof of a principal-agent relationship. Fed. R.Civ.P. 34. Under Rule 34, the term control generally addresses the legal right, authority, or ability of the party to whom/which the Rule 34 request is directed to exercise lawful possession over the premises or documents at issue. *See Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir.1984); *Florentia Contracting Corp. v. RTC*, 1993 WL 127187, * 3 (S.D.N.Y.); *McBryar v. International Union of United Automobile Aerospace & Agricultural Implement Workers of America*, 160 F.R.D. 691, 694 (S.D.Ind.1993) ("Ownership is not required; if a party possesses or has custody of a document or thing belonging to another person, the party must produce it.") (citing 8 Wright & Miller § 2210, p. 623–24); *Camden Iron*, 138 F.R.D. at 441; *Henderson v. Zurn Indus., Inc.*, 131 F.R.D. 560, 567 (S.D.Ind.1990); *Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D.Conn.1989); *Afros S.P.A. v. Krauss–Maffei Corp.*, 113 F.R.D. 127, 129 (D.Del.1986) ("The control analysis for Rule 34 purposes does not require the party to have actual managerial power over the for-

eign corporation, but rather that there be a close coordination between them.") (citation omitted). Moreover, federal courts broadly construe the term control for Rule 34 purposes. *Florentia Contracting Corp.*, 1993 WL 127187 at * 3; *Camden Iron*, 138 F.R.D. at 441; *Scott v. Arex, Inc.*, 124 F.R.D. at 41. Here, it is clear that Iran has sufficient control over Pak Dairy so as to legally permit the inspection sought by the plaintiffs. In fact, the recent ability of the defendant's expert, Mr. Richman, to visit Pak Dairy offers a good illustration of this fact. Based on the foregoing analysis, the court finds that Iran has control over the facilities that plaintiffs seek to inspect and that the motion to compel may properly be directed to defendant Iran.[4]

The court also rejects Iran's reliance on *Societe Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. 522, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987), which Iran argues supports its argument that it should not have to comply with the plaintiffs' request. Instead, the court finds support for granting plaintiffs' motion to compel in the Court's *Aerospatiale* decision. In *Aerospatiale*, the Court addressed the extent to which a federal district court must employ the discovery procedures provided for under the Hague Evidence Convention,[5] as opposed to using the discovery procedures of the Federal Rules of Civil Procedure. *See id.* at 524, 107 S.Ct. 2542. After reviewing the *Aerospatiale* case, this court agrees with the plaintiffs that *Aerospatiale* is of limited impor-

---

4. The court finds additional support for its decision in *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). In *Societe Internationale*, the Court considered an argument by the plaintiff that it did not have "control" for Rule 34 purposes over documents that it had been ordered to produce, because the production of these documents, which were in plaintiff's physical possession in Switzerland, would be in violation of Swiss criminal laws. *See id.* at 204, 78 S.Ct. 1087. The Court rejected this argument stating: "Petitioner is in a most advantageous position to plead with its own sovereign for relaxation of penal laws or for adoption of plans which will at least achieve a significant measure of compliance with the production order...." *Id.* at 205, 78 S.Ct. 1087. The Court found that under the circumstances of the case, the vital importance of the records warranted imposing the substantial burden on plaintiff that was entailed in complying with the discovery

order, even when those burdens involved foreign criminal penalties. *See id.* Here, the situation in favor of compelling Iran to permit plaintiffs' expert to visit Pak Dairy is much stronger. Iran stands in a much better position than the plaintiff in *Societe Internationale* in terms of being able to comply with a motion to compel. Here, in contrast to the plaintiff in *Societe Internationale*, Iran is the more dominant entity. Thus, a corporation is not trying to influence its own government, but rather a sovereign country is arguing that it lacks the ability to influence Pak Dairy, a corporation located in Iran and determined by this court to stand in an agent-principal relationship with Iran.

5. Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 UST 2555, TIAS No. 7444.

tance in the present dispute. First, Iran is not a party to the Hague Evidence Convention. Second, there are no allegations of abuse or improper purpose regarding plaintiffs' discovery, while in the portion of the *Aerospatiale* case quoted by Iran, the Court was concerned with the potential for "abusive" discovery. *See id.* at 546, 107 S.Ct. 2542. Third, in *Aerospatiale*, the Court rejected a rule requiring first resort to the discovery procedures of the Hague Convention, despite the importance of respecting the rights and interests of foreign nations and litigants. *See id.* at 542–43, 107 S.Ct. 2542. Instead, the Court adopted a more fact sensitive approach that actually supports this court's fact sensitive analysis and resolution of the motion to compel. *See id.* at 544, 107 S.Ct. 2542.

(2) Iran's Failure to Designate Witnesses Competent to Testify Regarding Twelve Valuation Related Issues.

Rule 30(b)(6) of the Federal Rules of Civil Procedure provides:

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on their behalf, and may set forth, for each person designated, the matters on which the person will testify ... The persons so designated shall testify as to matters known or reasonably available to the organization. ...

Fed,R.Civ.P. 30(b)(6).

 Rule 30(b)(6) is intended to streamline the discovery process. It allows an entity receiving a notice of deposition to speak through its designated agents, but the agents' statements generally are admissible as an admission of the entity. *See Resolution Trust Corp. v. Southern Union Co., Inc.,* 985 F.2d 196, 197 (5th Cir.1993); *In re Puerto Rico Electric Power Authority,* 687 F.2d 501, 503–04 (1st Cir.1982); *Hickory Specialties, Inc. v. Forest Flavors Int'l, Inc.,* 12 F.Supp.2d 760, 768 (M.D.Tenn.1998); *Barron v. Caterpillar, Inc.,* 168 F.R.D. 175, 176 (E.D.Pa.1996); *United States v. Taylor,* 166 F.R.D. 356, 361 (M.D.N.C.1996); *Buycks–Roberson v. Citibank Fed. Sav. Bank,* 162 F.R.D. 338, 342 (N.D.Ill.1995); *Nevada Power Co. v. Monsanto Co.,* 891 F.Supp. 1406, 1419 (D.Nev.1995); Charles A. Wright, Arthur R. Miller, and Richard L. Marcus, Federal Practice and Procedure § 2103 (1994). A designee of the receiving entity should not only testify about matters within his or her own personal knowledge, but also about matters which the receiving entity has reasonable knowledge and access. *See Rainey v. American Forest and Paper Assoc.,* 26 F.Supp.2d 82, 94 (D.D.C.1998); *Taylor,* 166 F.R.D. at 361. Moreover, Rule 30(b)(6) imposes a duty on the entity receiving a Rule 30(b)(6) notice to identify and provide responsive witnesses with knowledge concerning the relevant subject matter. *See id.* If an entity's designated witness lacks sufficient knowledge or fails to adequately respond to the deposition requirements, the responding entity must designate additional witnesses capable of providing sufficient answers. *See id.* This process was intended "to curb the bandying by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of the facts that are clearly known to the organization." *Michelman v. Hanil Bank, Ltd. (In re Jee),* 104 B.R. 289, 294 (Bankr.C.D.Cal.1989) (quoting 1970 Advisory Committee Notes to Rule 30). Normally the process operates extrajudicially. However, in this case several issues have arisen that require the court's attention.

 As an initial matter, the court will consider whether a Rule 30(b)(6) notice may be addressed to Iran in light of its status as a foreign sovereign. Although litigants customarily use this provision of the federal rules to notice the deposition of a corporation, this court finds no reason to preclude its application to Iran. The rule specifically provides for noticing the deposition of a governmental agency and federal courts have construed it to apply to governmental entities in the United States. *See e.g., United States ex. rel. O'Keefe v. McDonnell Douglas Corp.,* 961 F.Supp. 1288, 1290 (E.D.Mo.1997);

*Johns v. United States,* 1997 WL 732423, \* 1 (E.D.La. Nov. 21, 1997); *United States v. Davis,* 1993 WL 414761, \*4 n. 10 (D.R.I. Apr. 14, 1993); *Ghandi v. Police Dept. of the City of Detroit,* 74 F.R.D. 115, 121 (E.D.Mich. 1977). *See also United States v. District Council of the City of New York,* 1992 WL 208284 (S.D.N.Y. Aug. 18, 1992) (discussing the protections provided under Rule 30(b)(6) in the context of a potential notice addressed to a government entity). Federal courts have also applied Rule 30(b)(6) notices to foreign corporations. *See e.g., Monetti v. Anchor Hocking Corp.,* 1992 WL 77677 (N.D.Ill. Apr. 6, 1992) (foreign corporation ordered to produce witness pursuant to Rule 30(b)(6) for deposition in the United States); *Work v. Bier,* 106 F.R.D. 45, 52 (D.D.C.1985); *Slauenwhite v. Bekum Maschinenfabriken, GmbH,* 104 F.R.D. 616, 618 (D.Mass.1985) (foreign corporation subject to Rule 30(b)(6) (citing *Adidas (Canada) Ltd v. SS Seatrain Bennington,* 1984 WL 423, Nos. 80 Civ. 1922 & 82 Civ. 0375 (PNL) (S.D.N.Y. May 30, 1984))). This court is convinced that the confluence of these two lines of precedent well supports applying Rule 30(b)(6) to Iran in the present situation. *See generally, Zappia Middle East Construction Co. v. Abu Dhabi,* No. 94 Civ. 1942, 1995 WL 686715, at \*8 (S.D.N.Y. Nov. 17, 1995) (discussing the production of documents referred to in a deposition taken pursuant to a Rule 30(b)(6) notice addressed to the Emirate of Abu Dhabi). In fact the only countervailing consideration weighing against the operation of this provision with regard to Iran, is concern over international comity. However, as the court discussed with regard to the Rule 34 inspection issue, *see supra* Section II.(1)., Iran must accept the reasonable burdens imposed on it in defending this lawsuit so that plaintiffs are not denied fair process. The court believes that compliance with these provisions imposes a minimal burden on defendant and greatly enhances the just adjudication of this case.

Having determined that Iran properly may be served with a Rule 30(b)(6) notice, the court now addresses the parties' particular disputes regarding each item in plaintiffs' notice.

*Items 1–9*

Plaintiffs contend that Iran's noncommittal approach regarding Mr. Dadyar's testimony on the issues raised in items 1–9 of the plaintiffs' Rule 30 deposition notice is improper. Iran contends that Pak Dairy, and as a result Mr. Dadyar, are not its managing agents for Rule 30 purposes and that Iran is powerless to compel Mr. Dadyar's testimony.

 The court rejects Iran's argument. The court has previously found that Iran and Pak Dairy stand in a principal-agent relationship and despite Iran's claims to the contrary, no evidence has been presented to the court that would warrant reconsideration of this prior decision. The court rejects Iran's argument that Iran has no control over whether Mr. Dadyar will testify and that only Pak Dairy exercises control over Mr. Dadyar's testimony. The court has no doubt that if Iran instructs Mr. Dadyar to testify at a deposition in this case, he will comply. Moreover, the court remains convinced that Iran and Pak Dairy stand in a principal-agent relationship and that Mr. Dadyar is a proper Rule 30(b)(6) deponent. Accordingly, Iran is responsible for Mr. Dadyar's appearance at the deposition and his ability to answer the subject matters detailed in plaintiffs' items 1–9.

 The court also finds Iran's position regarding the location and time of Mr. Dadyar's deposition without merit. While it may be inconvenient for Mr. Dadyar to come to Washington, D.C. for the deposition, the court is firmly convinced that Washington, D.C. is the best location for the deposition, not Tehran, the Hague, or London. The court agrees with the plaintiffs that the court's location in Washington, D.C. is a critical factor in this decision. This litigation has been contentious and extremely lengthy. The court easily anticipates that disputes will arise between the parties during the deposition. The court's ability to effectively resolve these disputes would be seriously impaired if the deposition takes place halfway around the world. For example, the time zone difference between the court in Washington, D.C. and a deposition in the Hague or London would result in large breaks in time between when a conflict arises and when the

court would have the first opportunity to resolve it. Furthermore, a deposition in Washington, D.C. entails the least overall expense in light of the presence in Washington, D.C. of both parties' counsel, the relevant documents, and numerous Farsi–English translators. By contrast, a deposition in Iran would require the intrusion into Iran of plaintiffs' counsel, a foreign interpreter, and a court reporter. This intrusion would entail many of the same burdens on Iran's sovereignty that are discussed by Iran in objecting to the plaintiffs' Rule 34 request. Furthermore, a deposition in London would require both parties' counsel and Mr. Dadyar to exhaust substantial time and expense in traveling to London, a location with no relation to the present controversy. Under these circumstances, the court believes that it would be inappropriate to compel a deposition in London.[6]

### Item 10

#### 1. The Niktash Deposition

▉▉▉▉▉ The court finds sufficient disagreement between the parties on this issue so that it is appropriate for the court to address the issue. Thus, the court rejects Iran's argument that the plaintiffs' motion to compel on this issue is premature. The court also rejects Iran's proposed preconditions regarding its willingness to stipulate to the admissibility and authenticity of the documents it has produced. Accordingly, defendant Iran may choose one of two options. Iran may either (1) produce Ms. Niktash in Washington, D.C. within 30 days so that plaintiffs' attorneys may properly depose her pursuant to Rule 30(b)(6), or (2) make Ms. Niktash available from Iran for a telephonic deposition and stipulate to the authenticity and admissibility of all documents produced by Iran.

#### 2. The Documents Recently Brought Back by Mr. Richman from Iran

Iran shall produce an appropriate witness competent to testify on this subject matter.

It has not offered any reason to the court for its failure to designate an appropriate witness.

### Items 11 and 12

▉▉▉ Iran has not proffered any witnesses regarding these items. If Iran is unable to locate, after a proper effort, any witnesses able to testify as to these issues, then so be it. However, the court may subject Iran to sanctions, such as a prohibition on the presentation of evidence on this issue, if Iran later discovers proper witnesses and fails to offer a sufficient explanation to the court. Accordingly, Iran should engage in a genuine and thorough effort to identify an adequate deponent with regard to these items.

The court explicitly rejects Iran's argument concerning its control or lack of control over the shareholder entities. As previously discussed, Rule 30(b)(6) places the burden on Iran, the receiving entity, to identify and produce proper witnesses regarding the subject matters identified in the plaintiffs' deposition notice. Thus, if Iran knows of adequate witnesses but fails to produce them for deposition by the plaintiffs, it is Iran's responsibility to provide this court with an adequate explanation, and in the case of a purported lack of control, supporting evidence thereof. However, Iran has not done this. Rather, Iran has merely engaged in the dubious and self-serving explanation that it lacks control over the shareholder entities.

Moreover, the court is convinced that Iran and the shareholder entities should be presumed to continue to stand in a principal-agent relationship by virtue of the court's prior finding of a principal-agent relationship in 1982. Iran could have disproved this presumption, but Iran has presented no evidence to the court, contrary to its assertions, that would require the court to reconsider the status of this relationship.

#### (3) The Dispute Regarding Plaintiffs' Six Interrogatories

After reviewing each party's arguments regarding Iran's responses to plaintiffs' in-

---

**6.** However, these statements should not be interpreted as barring a deposition of Mr. Dadyar pursuant to an agreement between the parties. For example, the parties could reach an agreement for a deposition of Mr. Dadyar in London during the hours of 1–9 p.m. (GMT) / 8 a.m.–4 p.m. (EST), when the court could be available in Washington, D.C. via telephone to resolve disputes.

terrogatories, the court finds Iran's answers to interrogatories # 1, # 5, and the first part of # 4 adequate and Iran's other responses insufficient.

 Iran's responses to interrogatory # 1 interrogatory # 5 suffice because they identify a narrow subgroup of documents from which the plaintiffs may obtain the requested information. With respect to interrogatory # 2, the court agrees with plaintiffs and rejects Iran's contention that the only persons with relevant knowledge are Iran's experts. Accordingly, Iran will comply with this interrogatory and provide a more complete answer. With respect to interrogatory # 3, the court also agrees with plaintiffs that Iran's response is not sufficiently comprehensive or complete. With respect to the first part of interrogatory # 4, the court finds Iran's reply sufficient for the present time.[7] Nevertheless, defendant has entirely failed to address the second part of interrogatory # 4, which inquires about Iran's basis for its valuation contentions and the identity of persons with knowledge on the valuation issue on whom Iran intends to rely. Iran must remedy this error. With respect to interrogatory # 6, Iran must at least identify those witnesses that it anticipates may be called at trial. Iran's previous answer is evasive and not believable. It may update its response as circumstances dictate, but Iran may not refuse to reply on the basis that it has not yet made a final determination who will testify at trial. Under Iran's interpretation of what constitutes an adequate response, Iran would not be able to answer this interrogatory until trial actually began.

III. Conclusion

Thus, the court (1) grants the plaintiffs' motion to compel with regard to the Rule 34 inspection, (2) grants the plaintiffs' motion to compel with regard to the Rule 30 deposition notice, and (3) grants in part and denies in part the plaintiffs' motion to compel with regard to the Rule 33 interrogatory respons-

es. The court reiterates its firm conviction that these measures are necessary to ensure the fair and just adjudication of this dispute. The court has been mindful of Iran's sovereign status throughout this litigation and has given considerable attention in this matter to the principles of international comity. Nevertheless, Iran must comply with the reasonable burdens imposed on it in defending this suit. Any failure to promptly and properly comply with the court's directives, as set out in this memorandum opinion and the accompanying order, may subject Iran to appropriate sanctions.

7. Since even a preliminary answer regarding the valuation of Pak Dairy may constitute an admission, the court believes that it is inappropriate to order Iran to comply with the first part of this interrogatory at the present time. However, Iran should comply with this interrogatory once Iran reaches a determination of its contention regarding the value of Pak Dairy and its common stock and shareholders' equity as of April 1982.